**UNITED STATES of America, Plaintiff,**

v.

**Gordon URLACHER, Defendant.**

**No. CR 90–200T.**

United States District Court,
W.D. New York.

April 2, 1991.

Bradley E. Tyler, Asst. U.S. Atty., Rochester, N.Y., for plaintiff.

Lawrence J. Andolina, Harris, Beach & Wilcox, Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

On April 2, 1991, United States Magistrate Judge Kenneth R. Fisher issued a Decision and Order concerning the defendant's *ex parte* application for several pretrial subpoenas duces tecum, pursuant to Fed.R.Crim.P. 17(c). The Magistrate denied the defendant's motion, which sought review of financial, family, employment, automobile loan, and other documents and information concerning Roy C. Ruffin, upon the belief that Mr. Ruffin is to be the government's main witness at trial. The defendant objects to the Magistrate's denial of the *ex parte* application for the subpoenas, as well as to the Magistrate's conclusion that the defendant's motion papers should be unsealed.

The defendant cites Fed.R.Crim.P. 17(c) in support of his request for the *ex parte* subpoenas. Rule 17(c), however, simply does not support an *ex parte* application for such a subpoena, and the defendant has provided no other reason why the court should grant his request without benefit of notice to others involved. Moreover, defendant seeks extensive and personal information about an individual who is not a party to this action. Accordingly, both Mr. Ruffin and the United States Attorney are entitled to notice of such a motion. *See United States v. Castaneda*, 571 F.2d 444, 446 (9th Cir.1977). Because no such notice was given, the defendant's *ex parte* motion for subpoenas duces tecum is denied. The file is unsealed.

ALL OF THE ABOVE IS SO ORDERED.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate Judge.

Defendant moves *ex parte* for issuance, pretrial, of a subpoena duces tecum pursuant to Fed.R.Civ.P. 17(c) directed to the Marine Midland Bank, N.A., the Columbia Banking Federal Savings and Loan Association, the Summit Federal Credit Union, and the City of Rochester Employee Relations Bureau, commanding the production, again pretrial, of documents evidencing Roy C. Ruffin's financial, family, employment, car loan and other loan records.[1] Included also is a proposed subpoena directed to the Department of Finance at the City of Rochester directing production of

1.  Any and all records and/or other documentation relating to the use of and disbursement to the City of Rochester Police Department "Evidence Fund" and "Contingency Fund" including, but not limited to: (a) Written guidelines or procedure relating to the receipt and use of funds disbursed to the "Evidence Fund" and "Contingency Fund;" and (b) Documentation, including but not limited to: receipts, correspondence or other memoranda between the City of Rochester Police Department and the City of Rochester Department of Finance relating to and verifying the amounts of funds disbursed to the "Evidence Fund" and "Contingency Fund" for the years 1988 through 1990.

2.  Any and all records and/or documentation verifying the receipt of benefits in excess of $10,000.00 including, but not limited to, grants, contract funds, subsidies, loans, and/or guarantees, by the City of Rochester from the U.S. Department of Justice, Office of Justice Programs.

Mr. Ruffin is alleged to be a government informant who will be a key witness against the defendant at trial and who had "equal access" to the funds allegedly misapplied by defendant. The targeted records are alleged to constitute valuable evidence necessary to secure defendant's Sixth Amendment right to confront by cross-examination Mr. Ruffin's expected testimony, and, additionally, to show that Ruffin himself "may be solely responsible" for the crimes charged "and has sought to place responsibility upon the defendant in order to escape prosecution." The City Department of Finance Records are said to

---

1. The proposed Marine Midland subpoena (attached as the first page of defendant's motion papers, Exh. A), is blank. The proposed Columbia Banking subpoena commands production of documents at the Clerk's office "forthwith" consisting of "[a]ny and all documentation verifying financial transactions between Roy C. Ruffin and/or Pamela Ruffin and the financial institution including, but not limited to verification of all loan transactions, checking accounts, savings accounts, certificate of deposit accounts, credit card accounts or other transactions for the years 1987 through 1990." The proposed Summit Federal Credit Union subpoena similarly commands forthwith production to the Clerk of "[a]ny and all records and/or documentation including, but not limited to: applications, financial statements, verification of income, verification of net worth, or other financial information submitted by Roy C. Ruffin in his application for a loan to purchase a 1988 Cadillac Brougham E'Elegance on or about May 1988." The proposed City of Rochester Employee Relations Bureau subpoena directs similar production of "[a]ny and all employment records of Roy C. Ruffin, including but not limited to, all documentation verifying wages paid and hours worked for the years 1978 through 1990."

establish facts bearing directly on the elements of 18 U.S.C. § 666.

The government has not been served, and the defendant has demanded that the court seal the application, any hearing held with respect to it, and the court's ultimate disposition of the Rule 17(c) motion. Rule 17 does not, itself, authorize the *ex parte* nature of this motion for issuance of a subpoena, because subdivision (b) thereof applies to indigent defendants' applications only, but defendant contends that *United States v. Brown,* 535 F.2d 424 (8th Cir. 1976) provides authority for his manner of proceeding on this particular motion. The court intentionally delayed disposition of the motion, particularly as it concerned the City of Rochester records, until defendant's omnibus motions were filed, supposing that defendant might include in his discovery requests documents relating to Ruffin's financial affairs which may be in the possession of the government or any cooperating investigative entity. *See In re Department of Investigation of the City of New York,* 856 F.2d 481, 483–86 (2d Cir.1988); *id.* 856 F.2d at 486–87 (Meskill, J., dissenting), holding that if a municipal investigative body is acting jointly with federal agents who are investigating crime, the municipal entity is not considered a "third party properly subject to subpoena under Rule 17(c)" and that documents in possession of such an entity must be discovered, if at all, under Rule 16, the Jencks Act, 18 U.S.C. § 3500, and "what might loosely be called the area of constitutionally guaranteed access to evidence." *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 336, 102 L.Ed.2d 281 (1988) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). No such request having been forthcoming, it is presumably the intention of the defendant to take advantage of Rule 17(c)'s broader terms by seeking access to Ruffin's records in possession of the City and the named financial institutions without the specific and prior knowledge of the government.

## A. The Scheme of Rule 17

A resolution of the issues presented by defendant's *ex parte* application under Rule 17 requires a brief outline of the scheme of that rule. Subdivision (a) authorizes the issuance by the Clerk of a blank subpoena "for the attendance of witnesses" to any party requesting it, who shall then "fill in the blanks before it is served." Subdivision (a) does not contemplate prior involvement of a judicial officer and it presupposes, by virtue of Rule 17(d), that the subpoena will be served together with witness and mileage fees on the witness named if the subpoena is issued at the behest of the defendant. Subdivision (a) contains no requirement that, prior to the Clerk's issuance of a subpoena at the behest of either party, notice to the other party need be served, and the legislative history of Rule 16 reveals that "Congress considered and rejected a proposed amendment ... requiring compulsory disclosure of witnesses." *United States v. Brown,* 535 F.2d at 429 n. 3. *See* 8 J. Moore, *Moore's Federal Practice* ¶ 16.01[4][a] at 16–15, 16–19, ¶ 16.01[4][e] at 16–36, ¶ 16.02[2][c] at 16–44 (2d ed. 1986).

Because subdivision (a) subpoenas to witnesses may issue without prior leave of the court and in the absence of service on the opposing party, Rule 17(b) authorizes an *ex parte* procedure for the procurement, by an indigent defendant who cannot pay witness fees and mileage, of a similar subpoena "necessary to an adequate defense." Fed.R.Crim.P. 17(b). *See also,* 18 U.S.C. § 3006A(e)(1) (ex parte application under Criminal Justice Act for investigative expert, or other services). The *ex parte* procedure preserves to the indigent defendant the benefits of the rule authorizing compulsory attendance of witnesses without notice to the opposing party. In the *Brown* case, cited by defendant here, the court observed that local district court rules which require service of Rule 17(b) applications upon the government (A) violate the *ex parte* provisions of that rule, (B) "unfairly discriminat[e] against indigent defendants" in that they require of indigent defendants notice to the government "without requiring concomitant disclosure of the government's witnesses" and (C) unfairly

disadvantage the indigent defendant who cannot afford to pay witness and mileage fees thereby avoiding an application for prior court approval for issuance of the subpoena. *United States v. Brown*, 535 F.2d at 428–29. Other circuits have also held that Rule 17(b) "implies a duty to hold an ex parte hearing so that the defendant need not expose his defense strategy to the prosecution." *Thor v. United States*, 574 F.2d 215, 221 (5th Cir.1978). *See also, United States v. Greschner*, 802 F.2d 373, 379–80 (10th Cir.1986) (collecting cases), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1986); *United States v. Gordon*, 634 F.2d 639, 646 n. 2 (1st Cir. 1980). After the court determines a Rule 17(b) application in favor of a defendant, "it would seem that the secrecy of the application should be maintained after it is granted." 2 C. Wright, *Federal Practice and Procedure*, § 272 at 140 (2d ed. 1982).[2]

Finally, subdivision (c) authorizes a party to require, in addition to attendance of witnesses, the production of documents or other physical evidence within the custody and control of the named witness. Rule 17(c) also provides an opportunity for the witness or custodian to challenge a subpoena duces tecum by a motion to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed.R. Civ.P. 17(c). Discretion is given the court to direct production "before the court at a time prior to trial or prior to the time when they are to be offered in evidence." *Id.* Discretion is also given the court to provide with respect to the subpoenaed items, presumably in an appropriate order, "upon their production ... [for] inspect[ion] by the *parties and their attorneys*." *Id.* (emphasis supplied).

Because subdivision (c) does not "specifically require" "that a party must invoke the court's discretion by motion before the subpoena is made returnable in advance of

trial," 8 J. Moore, *Moore's Federal Practice* ¶ 17.06 at 17–26 (2d ed. 1988), the question arises in this case, which involves a defendant of financial means, whether the motion is necessary or otherwise appropriate. Furthermore, the question arises, because this motion is essentially one for the production of documents and not the testimony of a witness, whether the *ex parte* nature of the application, even if invoking the court's aid is necessary or appropriate, must be preserved, particularly in view of the Rule's provision that pretrial disclosure of the things to be produced may, in the court's discretion, be inspected by the parties and their attorneys.

### B. *Necessity of a Pretrial Motion for Issuance*

■ The first question is not easily answered. The prior invocation of the court's aid when pretrial production pursuant to a subpoena duces tecum is sought has been described as "an orderly and desirable procedure and one often followed." *Id.* ¶ 17.06 at 17–26. 2 C. Wright, *Federal Practice and Procedure*, § 274 at 155 (2d ed. 1982). At least one case has read the rule to require a motion prior to issuance of a pretrial subpoena duces tecum. *United States v. Ferguson*, 37 F.R.D. 6, 8 (D.D.C. 1965). The cited treatises acknowledge, however, that "the issue can be raised as well on a motion to quash, a procedure definitely authorized by Rule 17(c)." 8 J. Moore, *Moore's Federal Practice*, ¶ 17.06 at 17–26; 2 C. Wright, *Federal Practice and Procedure*, § 274 at 154–55. Although one possible disposition of this motion is to dismiss it as unnecessary because the rule provides for adequate court supervision of a pretrial subpoena on a motion to quash if one is made by the bank or the City, it was prudent for defendant to seek the court's aid in the matter, which will

---

**2.** I offered defense counsel an opportunity to appear in court on the record for a closed ex parte hearing on at least three occasions. On the last such occasion, March 13, 1991, defense counsel indicated, as he did on the other occasions, that he would contact my chambers to schedule a time for the hearing. When no call was forthcoming early on the week of March

18th as promised, my chambers telephoned defense counsel in an effort to schedule the hearing. Our call was not returned. Having left a sufficient time for defense counsel to follow through, it must now be determined that any request for an oral presentation of the motion has been abandoned.

ensure the judicial supervision contemplated by subdivision (c) at the earliest stage. Various procedural and evidentiary requirements may, *Bowman Dairy Company v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 678–79, 95 L.Ed. 879 (1951), or may not, *United States v. Nixon*, 418 U.S. 683, 699 n. 12, 94 S.Ct. 3090, 3103 n. 12, 41 L.Ed.2d 1039 (1974) be applicable in the pretrial stage (because of a recent Supreme Court case, I hold in Part D, hereof, that they do apply). If the subpoena is proper, the court will almost invariably wish to consider, even prior to issuance, whether to "direct that books, papers, documents or objects designated in the subpoena be produced *before the court* ... [and for the purpose of] inspect[ion] by the parties and their attorneys." Fed.R.Crim.P. 17(c) (emphasis supplied). Therefore, the motion for issuance is appropriate, though not strictly necessary, and should be entertained by the court.

C. *Whether a Motion for Issuance May Be Made Ex Parte*

■ Whether the motion for issuance of a pretrial subpoena duces tecum which does not also seek the trial testimony of a named witness may be made *ex parte* is quite another matter. There are two obstacles to defendant's manner of application. First, he is not indigent or otherwise unable to pay. Rule 17(b), which contains the only authorization for an ex parte application, is addressed to defendants unable to pay. Second, the proposed subpoena is not designed to secure trial testimony of witnesses; rather it seeks pretrial production of documents. Rule 17 does not explicitly authorize *ex parte* applications to the court for issuance of document subpoenas, even for indigent defendants. Rule 17(c) does not establish, or even address, a financially able defendant's right to an *ex parte* application when pretrial production of documents or items is sought.

Defendant does not cite a case which establishes his right to the *ex parte* procedures undertaken here. *United States v. Brown, supra,* cited by defendant, concerned the Rule 16 protection of each party's witness list from disclosure, and the

Rule 17(b) protection of an "indigent defendant's" witness subpoenas. *Id.* 535 F.2d at 429. The case did not concern subpoenas duces tecum, whether pretrial or otherwise, and it did not involve a defendant of financial means. There are examples of *ex parte* applications for a subpoena duces tecum, but the propriety of the *ex parte* nature of the application was not addressed. *United States v. Schembari*, 484 F.2d 931, 935–36 (4th Cir.1973); *United States ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc.*, 600 F.Supp. 667, 668, 670 n. 1 (S.D.N.Y.1985) (entertaining an indigent defendant's *ex parte* application for issuance of a subpoena duces tecum to CBS News, and observing that "[n]o purpose would be served in issuing the subpoena" because a motion to quash would be made and, necessarily, "would have to be granted"); *United States v. Brzezinski*, unpublished (N.D.Ill. January 21, 1988) (1988 WL 1405). The only closest authority I have found (without the benefit of adversary briefing) on the propriety of the ex parte procedure in a case which evidently considered the issue, however, is Judge Kaufman's opinion in *United States v. Hiss*, 9 F.R.D. 515, 516–17 (S.D.N.Y.1949), which disapproved an *ex parte* issuing order, but seemed to do so also on prematurity grounds. Ex parte applications for pretrial subpoenas duces tecum were, in that case, almost gratuitously described as "promiscuou[s]." *Id.* 9 F.R.D. at 516. In any event, the examples of ex parte applications all involved defendants unable to pay.

The scheme of Rule 17 supports the view that Congress intended to distinguish between pretrial subpoenas duces tecum and trial subpoenas ad testificandum at least insofar as ex parte procedures are concerned. The explicit provision of a motion to quash or modify in Rule 17(c), and the "innovat[ive]," *Bowman Dairy Company v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951); 8 J. Moore, *Moore's Federal Practice* ¶ 17.06, at 17–23, albeit "subsidiary," *United States v. Murray*, 297 F.2d 812, 821 (2d Cir.1962), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962), provision

for pretrial production under supervision of the court and upon terms which permit "inspect[ion] by the parties and their attorneys," clearly suggests, if not compels, a conclusion that litigation concerning issuance of and compliance with subpoenas duces tecum be conducted upon notice, and not in secret. Indeed, defense counsel's affirmation in this case acknowledges, implicitly, that the ex parte nature of the proceeding will vanish once production occurs. Thus, defense counsel requests a court order directing the named custodians "to produce various documents designated in the subpoenas before the Court at a time prior to trial *so that such documentation may be inspected by the parties and their attorneys prior to trial.*" Andolina affirmation ¶ 4, at 2 (emphasis supplied).

There can be no "right" to ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties inspection prior to trial. Defendant identifies no discrete interest in having the application to the court for issuance of the subpoena conducted ex parte when all other subsequent proceedings which attend compliance are conducted, necessarily, in open court and at a time sufficiently in advance of trial to prevent surprise. It may be that the defendant or the evidence custodian will have a legitimate interest in securing an in camera review by the court of the documents demanded for the purpose of obtaining a determination that the subpoena duces tecum attempts improper discovery of nonevidentiary material, or that it seeks privileged material. *United States v. Nixon,* 418 U.S. 683, 689, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974); *United States v. Cuthbertson,* 651 F.2d 189, 192, 195 (3d Cir.1981), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981); *United States v. LaRouche Campaign,* 841 F.2d 1176, 1178–80, 1182–83 (1st Cir. 1988); *United States v. Burke,* 700 F.2d

70, 78 n. 9 (2d Cir.1983), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Gel Spice Company, Inc.,* 601 F.Supp. 1214, 1218–19, 1224–26 (E.D.N. Y.1985). *See also, United States v. North,* unpublished Crim. No. 88–0080–02 (D.D.C. January 19, 1989) (1989 WL 12038) (sealing defendant's opposition to OIC's Rule 17(c) issuance motion "to protect references to a grand jury transcript").[3] But the allowance for in camera review in such circumstances does not also mean that an otherwise ex parte or secret proceeding is authorized in other than the situations contemplated in Rule 17(b) and 18 U.S.C. § 3006A(e).

A different situation would be presented if the motion directing the issuance of the subpoena duces tecum requested production of the documents only at trial, for in that situation the rule makes no provision authorizing inspection by the parties, though the opposing side would undoubtedly be given an opportunity to challenge any attempted trial use of the targeted documents. Even in the case of a trial subpoena duces tecum, however, the custodian has a Rule 17(c) motion to quash or modify, and one cannot easily imagine that such a motion should be heard and decided in secret, without the knowledge of all parties. Rule 17, quite clearly, does not authorize "ex parte" motions to quash conducted in secret and hidden from the opposing party and the public.

One other reason exists for denying a party ex parte consideration of a motion for issuance of pretrial subpoenas duces tecum. There is a presumption in favor of a First Amendment right of access to pretrial criminal proceedings for which "the place and process have historically been open to the press and general public," and for which it is "logic[al]" to consider that "public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise*

---

**3.** The device of an *in camera* review is not without limitation. As the Supreme Court has recognized in a recent case, there are "possible due process implications of routine use of *in camera* proceedings," and "we cannot ignore the burdens *in camera* review places upon the dis-

trict courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties." *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 2630, 105 L.Ed.2d 469 (1989).

Company v. Superior Court of California (Press–Enterprise II), 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986). The Second Circuit has found a qualified First Amendment right of access to pretrial motion papers containing Title III materials, In re The New York Times Company, 828 F.2d 110, 114 (2d Cir.1987), after remand, 834 F.2d 1152 (2d Cir.1987), cert. denied sub nom. Esposito v. New York Times Company, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988), and to other unsuppressed Title III surveillance evidence which is included in briefs or memoranda filed in connection with any pretrial motion. United States v. Gerena, 869 F.2d 82, 85 (2d Cir.1989). In Gerena, the court held that "the qualified First Amendment right of public access, ... applies not only when defendants want to keep information under seal but also when the government, for its own reasons, desires to keep information out of the public domain." Id. 869 F.2d at 85.

Recently, in United States v. Suarez, 880 F.2d 626 (2d Cir.1989), the court upheld a First Amendment qualified right of access to Criminal Justice Act Interim Payment forms to attorneys or expert witnesses and others for whom services to defense counsel were paid. Id. 880 F.2d at 630–31. The court held that, "[b]ecause there is no persuasive reason to ignore the presumption of openness that applies to documents submitted in connection with a criminal proceeding, we conclude that the public has a qualified First Amendment right of access to the CJA forms after payment has been approved [even though] there is no 'tradition of accessibility' to CJA forms." Id. 880 F.2d at 631. See also Seattle Times Company v. United States District Court for the Western District of Washington, 845 F.2d 1513, 1515–19 (9th Cir. 1988) (access to financial affidavit supporting CJA application for appointed counsel). Recent decisions show a trend in favor of recognizing a qualified right of access, either founded in the common law or in the First Amendment, to documents filed in connection with pretrial proceedings. See, e.g., In the Matter of the Application and Affidavit for a Search Warrant (The Washington Post Company) v. Hughes, 923 F.2d 324, 326–28 (4th Cir.1991) (affidavit supporting search warrant application); The Oregonian Publishing Company v. The United States District Court for the District of Oregon, 920 F.2d 1462, 1465–66 (9th Cir.1990) (plea agreements); In re The State–Record Company, Inc., 917 F.2d 124, 127–29 (4th Cir.1990) (government responses to defendant's Brady and Rule 404(b) motions which are alleged to be prejudicial and which would be the subject of intense publicity).

Whether the qualified right of access would, in the final analysis, be outweighed by a constitutional, common law, or statutory interest of the defendant is not considered here because those issues have neither been briefed or proffered by the defendant. United States v. Suarez, 880 F.2d at 631 (the right of access "is not absolute"). As indicated above, however, and especially in view of defendant's concession that production of the documents requested pretrial to the court clerk may be for the explicit purpose of giving each party an opportunity for inspection pursuant to Rule 17(c), it is difficult to discern how an adversary presentation of the motion for issuance of the subpoena duces tecum would "imping[e]" on the defendant's rights against, for example, premature disclosure of his trial strategy. If indeed Ruffin will testify as one of the government's primary witnesses and if indeed he had the same access to allegedly misapplied funds that the defendant himself is alleged to have had, it would be no secret to the prosecution or indeed to anyone that the defense might naturally wish to impugn Ruffin's credibility and establish, if possible, Ruffin's complicity, whether exclusive or not, in the crimes charged against the defendant. Cf., id. 880 F.2d at 631–32 (disclosure of CJA forms would not "disclose a trial strategy not already revealed").

These issues, of course, cannot be resolved on the present record, because the defendant has asserted a right to proceeding ex parte on the basis of a rule which grants that right only to indigent defendants in connection with trial subpoenas

for witnesses and, perhaps, subpoenas duces tecum returnable upon the trial (not at the pretrial stage). Defendant has not asserted any other basis which may exist to justify his ex parte procedure. The point here is simply to recognize the qualified right of access which may exist in the circumstances and the insufficiency on the present record of defendant's proffer of countervailing interests to carry his burden to show that the proceeding should be closed. *Press–Enterprise II,* 478 U.S. at 14, 106 S.Ct. at 2743. In the absence of such proof, the procedural requirements imposed in *United States v. Haller,* 837 F.2d 84 (2d Cir.1988) to ensure vindication of the qualified right of access, particularly in regard to the necessity of articulated and supportable findings, *id.* 837 F.2d at 88–89, cannot be attained. The sealing cannot, therefore, be justified any longer.

### D. *Prematurity of the Motion*

■ With respect to the merits, this motion is premature, and it should be entertained only when a trial date is firmly set. *United States v. Poindexter,* 725 F.Supp. 13, 28–29 (D.D.C.1989). Motions held premature because no trial date has yet been set, *e.g., United States v. North,* unpublished Crim. No. 88–0080–02 (D.D.C. November 7, 1988) (1988 WL 148498), or because subsequent pretrial and trial developments would alter the evidentiary scenario

which might, or might not, justify issuance, *e.g., United States v. Hiss,* 9 F.R.D. at 516–17, are later entertained, *United States v. North,* unpublished Crim. No. 88–0080–02 (D.D.C. December 22, 1988) (1988 WL 148480), and determined sufficiently in advance of the trial date to ensure a fair trial. *Id.; United States v. North,* 708 F.Supp. 402 (D.D.C.1989) (denying Rule 17(c) subpoena for defendant's spiral notebooks).[4]

## CONCLUSION

For all of the foregoing reasons, defendant's *ex parte* motion for issuance of subpoenas duces tecum described above is denied without prejudice. In addition, the motion papers and this order are directed to be unsealed together with the docket entries relating thereto. A stay of the effect of that portion of this order directing unsealing is granted for the duration of the ten (10) day appeal period. *In the Matter of the Application and Affidavit for a Search Warrant (The Washington Post Company) v. Hughes,* 923 F.2d at 327 n. 2 ("A magistrate's power to seal or unseal a document derives from the district court's power to take such actions and the dissent points to no statute or court rule empowering magistrates to make final rulings in such cases.")[5] An application to continue the stay beyond the ten day appeal period

---

4. When the motion ripens, an adversary presentation of the evidentiary and other procedural issues must be made. Rule 17(c) subpoenas may not be used as a discovery device, *United States v. Murray,* 297 F.2d at 821, and they must meet the evidentiary standard set forth in *United States v. Nixon,* 418 U.S. at 699–700, 94 S.Ct. at 3103–04; *Bowman Dairy Company v. United States,* 341 U.S. at 219–21, 71 S.Ct. at 678–79; *United States v. Iozia,* 13 F.R.D. 335 (S.D.N.Y. 1952). *See also, United States v. R. Enterprises, Inc.,* —— U.S. ——, 111 S.Ct. 722, 727, 112 L.Ed.2d 795 (1991) (*Nixon* holds that, "in order to require production of information prior to trial, a party must make a reasonably specific request for information that would be *both relevant and admissible at trial"*) (emphasis supplied); *United States v. Cuthbertson,* 651 F.2d at 195 ("naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule"); *United States v. Gel Spice Company, Inc.,* 601 F.Supp. at 1224–25.

5. The portion of this order directed to unsealing is, in essence, a report and recommendation for the reasons stated in *Hughes.* A stay thus ensures district court review before unsealing is accomplished. Such review would be meaningless if the unsealing recommended here was effected prior to the district court review ensured here.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 37(a)(3), any objections to this Report and Recommendation must be filed with the Clerk of the court within ten (10) days of receipt thereof. Failure to file objections within the specified time waives the right to appeal a District Court Order adopting this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a) and 6(c); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

must be timely addressed to the Chief Judge. In the absence of an appeal taken within the ten day statutory period directed to the *ex parte* or sealing issue, the Clerk is authorized to unseal defendant's motion papers together with this order and the docket sheet entries relating thereto. Failing an appeal directed to those issues, the defendant will be deemed to have waived any right to maintaining the ex parte nature of this application. *Cf., United States v. Greschner,* 802 F.2d at 380 (defendants may waive § 3006A(e) *ex parte* requirement); *Thor v. United States,* 574 F.2d at 221 (waiver of Rule 17(b) *ex parte* procedure).

SO ORDERED.