UNITED STATES of America, Plaintiff,

v.

Sylister JENKINS, Defendant.

CR. No. 95–00235 DAE.

United States District Court, D. Hawai'i.

Aug. 17, 1995.

Steven S. Alm, U.S. Attorney, Loretta A. Matsunaga, Asst. U.S. Attorney, Honolulu, HI, for plaintiff.

Richard Ney, Federal Public Defender, Honolulu, HI, for defendant.

## ORDER REVERSING MAGISTRATE JUDGE'S ISSUANCE OF PRETRIAL SUBPOENAS DUCES TECUM

DAVID ALAN EZRA, District Judge.

Pursuant to Local Rules 304–1(b) and 404–1, the court finds this matter suitable for disposition without hearing. Loretta A. Matsunaga, Esq., appeared on the briefs on behalf of the Government; Richard Ney, Esq., appeared on the briefs on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court REVERSES the decisions of the magistrate judge issuing subpoenas *duces tecum* returnable before trial.

### BACKGROUND

The Government has charged Defendant Sylister R. Jenkins ("Defendant") with eight counts of sexual abuse. Defendant filed an *ex parte* application pursuant to Federal Rule of Criminal Procedure 17 for issuance of subpoenas *duces tecum* for the medical records of the alleged rape victim from Queen's Medical Center ("Queen's") and Castle Medical Center ("Castle"). Magistrate Judge Francis I. Yamashita entered an order permitting the issuance of the subpoenas to Queen's with a return date of July 3, 1995. At that time, trial was scheduled to begin on July 11, 1995; it has since been continued. Having learned of the subpoena, the Government filed a Motion to Quash on July 7, 1995. Queen's filed a Motion to Quash on July 11, 1995. The magistrate ruled that the Government did not have standing to move to quash but treated the Government's papers as a memorandum in support of Queen's motion. Castle made no Motion to Quash, turning

over the records sought directly to the Defendant.

The magistrate ordered that the medical records from Queen's be submitted for review *in camera.* The Government moved for reconsideration of the magistrate's denial of its Motion to Quash. The magistrate found the motion mooted by its *in camera* review of the Queen's records and by Castle's compliance with the subpoena. The Government then filed the instant appeal of the magistrate's order.

Subsequently, the magistrate completed his *in camera* review of the Queen's documents, finding the majority inadmissible under Federal Rule of Evidence 412. The magistrate found three entries admissible for impeachment purposes and not barred by FRE 412.

## STANDARD OF REVIEW

In ruling on an appeal from a non-dispositive matter decided by a magistrate judge, a district court may only set aside a magistrate's order if it finds the order to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); Local Rule 404–1. The district judge must affirm the magistrate unless "it is left with the definite and firm conviction that a mistake has been committed." *Burdick v. Commissioner,* 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court. *Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991).

## DISCUSSION

### I. Mootness

 Defendant argues that the results of the magistrate's *in camera* review moots the issues presented in the appeal. Defendant asserts that because the magistrate has already reviewed the Queen's documents and ordered certain documents released to Defendant, the appeal is moot as to those documents. Defendant further argues that Castle has already turned over its documents to

Defendant, mooting that portion of the appeal as well.

 This court will find an appeal moot where it lacks the ability to grant any effective relief. *See In re Cook,* 730 F.2d 1324, 1326 (9th Cir.1984). The Ninth Circuit dismissed as moot an appeal from the denial of a motion to quash a Grand Jury subpoena *duces tecum* where the Government had already presented the documents to the Grand Jury and obtained an indictment in *In re Grand Jury Subpoena Dated June 5, 1985,* 825 F.2d 231 (9th Cir.1987). In the same case, however, the court found ripe another party's appeal because the Grand Jury had not yet indicted that party. *Id.* at 235 (citing *In re Grand Jury Investigation, No. 78–184 (Sells),* 642 F.2d 1184, 1187–88 (9th Cir.1981), *aff'd sub nom., United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983)). Generally, an appeal from the enforcement of a subpoena becomes moot once the party has complied with the subpoena. *See Office of Thrift Supervision v. Dobbs,* 931 F.2d 956, 957 (D.C.Cir.1991) (collecting cases). In *United States E.P.A. v. Alyeska Pipeline Serv. Co.,* 836 F.2d 443 (9th Cir.1988), however, the Ninth Circuit found ripe defendant's appeal from the enforcement of an E.P.A. subpoena because: (1) the government would be required to return the records; and (2) the E.P.A. had served similar subpoenas on defendant's employees. The court reasoned that the existence of the other subpoenas indicated that the case was "capable of repetition, yet evading review." 836 F.2d at 445 (citation omitted).

 While the court is not aware of any similar subpoenas outstanding, this matter is certainly capable of repetition.[1] If this court found the matter moot, it would also evade review. The subpoena issued to Castle evaded all review due to Castle's compliance. The subpoena issued to Queen's evaded review of the magistrate's original issuance and his determination regarding standing due to the disclosure of the documents and the magistrate's *in camera* review.[2]

---

1. Moreover, as discussed below, the court needs to set out the correct standard for the issuance of pretrial subpoenas *duces tecum* due to repeated difficulties in applying the standard.

2. The court is troubled by the Government's failure to take further action after the magistrate conducted an *in camera* review of the Queen's documents and provided an opportunity for the

■ In addition, this court may provide some effective, albeit limited, relief. While Defendant has possession of the documents, the magistrate did not place any limitations on the use or disclosure of the documents. Each day of continued access to the documents compounds the harm created by their allegedly wrongful disclosure. *Cf. Sells,* 642 F.2d at 1188 (in Grand Jury context where secrecy is required by Fed.R.Crim.P. 6, each day of access lifted the veil of secrecy higher through exposure to additional personnel and continued access by those already familiar with the documents). While the right to keep medical records private is not absolute, *In re Grand Jury Proceedings,* 867 F.2d 562 (9th Cir.), *cert. denied,* 493 U.S. 906, 110 S.Ct. 265, 107 L.Ed.2d 214 (1989), it is an important consideration to be weighed in reviewing such subpoenas. This court may grant certain relief by ordering the documents returned to Queen's and Castle. *See Alyeska Pipeline Serv.,* 836 F.2d at 445 (court may order documents returned). For these reasons, the court finds that this appeal presents a live and justiciable controversy.

## II. Standing

■ The Government's argument regarding standing confuses standing to move to quash with the question of *ex parte* application for a pretrial subpoena *duces tecum.* The question whether a defendant seeking a pretrial subpoena *duces tecum* must notify the Government does not decide the question whether, once issued, the Government may move to quash the subpoena issued to a third-party.

■ Nevertheless, the court finds that the Government does have standing to move to quash the subpoena to Queen's. A party to a criminal case "has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.) (citing *In re Grand Jury,* 619 F.2d 1022, 1027 (3d Cir. 1980)), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982). The Government has standing to move to quash a defendant's subpoena based "upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility." *Raineri,* 670 F.2d at 712. The court finds that the Government did have standing to move to quash the subpoena to Queen's due to the Government's interest in protecting the victim against harassment. However, because the magistrate apparently considered the Government's arguments in ruling on Queen's motion and reviewed the documents *in camera,* the court finds the magistrate's error harmless here.

## III. Standard for Issuing Pretrial Subpoena *Duces Tecum*

■ In *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court held that pretrial production pursuant to Federal Rule of Criminal Procedure 17(c) is only appropriate where it is shown that: (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not a fishing expedition. 418 U.S. at 699, 94 S.Ct. at 3103. It is left to the trial court's discretion to determine whether the party seeking the subpoena has cleared these hurdles. *United States v. Eden,* 659 F.2d 1376, 1381 (9th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982).

Courts have repeatedly held that Rule 17(c) subpoenas should not be used to obtain,

---

Government to object to the disclosure: "The Court will disclose the April entries to the Defendant in five business days from the date of filing this order unless otherwise ordered by the District Court." July 27, 1995 Ruling Upon In Camera Inspection, at 4. Because the Government did not seek this court's review of the *in camera* decision, the documents were disclosed.

This limits the court's review; the court will not consider the merits of the magistrate's *in camera* determination that certain entries should be disclosed. However, the court does not construe the Government's inaction as a waiver because the Government had already filed the instant appeal.

before trial, materials to be used for impeachment purposes. *United States v. Fields,* 663 F.2d 880, 881 (9th Cir.1981) (where the only purpose advanced by defendants for the use of materials sought by Rule 17(c) subpoena was for impeachment purposes, there was insufficient reason to warrant pretrial production of such documents). *See also United States v. Nixon,* 418 U.S. at 701, 94 S.Ct. at 3104 ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.") (*citing United States v. Carter,* 15 F.R.D. 367, 369–72 (D.D.C.1954) (Rule 17(c) may not be used to obtain statements of witnesses unless the witness testifies at trial)); *United States v. Hughes,* 895 F.2d 1135, 1145–46 (6th Cir.1990) (district court properly quashed Rule 17(c) subpoena seeking documents to impeach Government witness); *United States v. Cuthbertson,* 651 F.2d 189, 195 (3d Cir.1981) (hearsay evidence which could only be used for impeachment may not be obtained by a Rule 17(c) subpoena), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981).

■■ Although the court does not here review the magistrate's ruling on the *in camera* inspection, the court notes that there the magistrate made a specific finding that the evidence would be admissible for impeachment purposes only. July 27, 1995 Ruling on *In Camera* Inspection. Defendant's application for the subpoenas to Queen's and Castle lists impeachment as the exclusive purpose of the documents sought. The court finds that the magistrate erred in issuing subpoenas for impeachment evidence returnable before trial.

■■ Defendant may complain that forcing him to wait for trial contravenes his right to confront his accuser. The court agrees that Defendant's confrontation right is "broad" and "especially important." *United States v. Mayans,* 17 F.3d 1174, 1184 (9th Cir.1994) (citation omitted); *United States v. Brooke,* 4 F.3d 1480, 1489 (9th Cir.1993). However, this right is not infringed by waiting until trial for production of these docu-

ments. While it is very likely that the witness whose records Defendant seeks will testify at trial, it is not certain, and the case law cautions against requiring third parties to produce impeaching documents before the witness has testified. *United States v. Fields,* 663 F.2d at 881 (holding that an order so requiring was an abuse of discretion). The court finds that the magistrate clearly erred in allowing the issuance of pretrial subpoenas *duces tecum* for impeachment evidence.

■■ The manner in which the subpoena to Castle was executed creates a further difficulty in addition to those discussed above.[3] Rule 17(c) provides that the court may direct the documents to be produced "before the court at a time prior to trial or prior to the time when they are to be offered in evidence." It appears to the court that Castle delivered the documents directly to counsel for the Defendant. Indeed, Defendant's application for the subpoenas *duces tecum* makes a request for subpoenas requiring "the documents to be turned over directly to the defense at the earliest possible date." June 16, 1995 Memorandum in Support of *Ex Parte* Application (Under Seal), at 4. The magistrate erred in allowing the documents to be turned over directly to the defense and not to the court. In addition, he erred in failing to permit both the Government and the Defendant to examine the documents. Rule 17(c) provides that if the court determines that documents may be produced before the court prior to trial, the court may allow the documents "to be inspected by the parties and their attorneys." Fed.R.Crim.P. 17(c). Rule 17(c) makes no provision for allowing only one party access to the documents.

For these reasons, the court finds that the magistrate clearly erred in issuing the subpoenas *duces tecum* to Castle and Queen's.

**IV. Procedure for Issuance of Subpoenas Duces Tecum**

■■ The Government's appeal presents a question of apparent first impression in the

---

**3.** The court notes that Queen's avoided this same problem only because it refused to turn over the documents directly to the defense.

Ninth Circuit: may a defendant unable to pay process and witness fees proceed *ex parte* in an application for a subpoena *duces tecum* for the pretrial production of documents under Federal Rule of Criminal Procedure 17(c)? Although the court has already concluded that the magistrate erred in issuing these subpoenas before trial, the question of the participation of the Government in the application process presents a continuing difficulty that the court feels compelled to address here.

The Federal Rules of Criminal Procedure provide a process whereby defendants who cannot pay service and witness fees may apply to the court for the issuance of a subpoena "on a named witness" and the payment of the fees "in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government." Fed.R.Crim.P. 17(b). Courts shall order such subpoenas where the defendant shows his inability to pay and shows that "the presence of the witness is necessary to an adequate defense." *Id.* The provision for *ex parte* applications was added in 1966 in response to the inequity foisted upon indigent defendants forced to disclose their theory of defense in order to obtain the issuance of a subpoena at government expense, while the government and defendants able to pay could obtain subpoenas "in blank" under Rule 17(a). *See* Rule 17(b), advisory committee note to 1966 Amendment; *Smith v. United States*, 312 F.2d 867, 871 (D.C.Cir. 1962) (Skelly Wright, J., concurring in part and dissenting in part) ("Rule 17(b) apparently presents an indigent with a Hobson's choice: either made no defense or disclose his whole case to the Government before his trial."); 8 Moore's Federal Practice ¶ 17.01[6] at 17–5 (2d ed. 1986).

 Pursuant to Rule 17(c), either party to a criminal proceeding may obtain a subpoena *duces tecum* directing the recipient to produce documents or other materials.[4] The rule implements the Sixth Amendment guarantee that an accused enjoy the right to compulsory process to secure favorable evidence. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). The first sentence of Rule 17(c) clearly places the issuance of subpoenas *duces tecum* returnable at trial under the provisions of Rules 17(a) and 17(b) governing the issuance of trial subpoenas *ad testificandum. See* 2 Wright, Federal Practice and Procedure, § 274 at 150. Assuming that the application is for production at trial, the fact that a defendant with funds may proceed without application mandates that a defendant without funds also be allowed to proceed *ex parte.* An application for a subpoena and payment of fees must be allowed *ex parte* in order to avoid penalizing defendants financially unable to pay.

 However, where the application seeks pretrial production of documents, the scene changes, and the application of the provision for *ex parte* proceedings becomes unclear. Rule 17(c) leaves pretrial production of documents to the discretion of the court, and it is well established that Rule 17 is not a discovery device. *United States v. Nixon*, 418 U.S. at 699, 94 S.Ct. at 3103. Its purpose is to provide compulsory process to insure that the defendant can obtain favorable evidence at trial. While there is no controlling authority on this issue, the need for the court's approval of pretrial production of documents weighs heavily in favor of requiring all parties to apply with the court for subpoenas *duces tecum* seeking pretrial production. *Compare United States v. Ferguson*, 37 F.R.D. 6, 8 (D.D.C.1965) (leave of court required for pretrial production) *with United States v. Van Allen*, 28 F.R.D. 329, 334 (D.C.N.Y.1961) (leave of court not ordinarily required).

---

4. Rule 17(c) provides:
A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Instructive on the question of requiring applications is *United States v. Noriega,* 764 F.Supp. 1480 (S.D.Fla.1991), where the government, without applying to the court, served subpoenas *duces tecum* upon a correctional center, seeking pretrial production of tape recordings of the defendant's telephone conversations. 764 F.Supp. at 1492. The subpoenas contained return dates not tied in any way to court proceedings, indicating the prosecution's intent to hear the recording before trial. *Id.* The court wrote that these subpoenas constituted "precisely the kind of unwarranted [discovery] expedition which Rule 17(c) does not permit." *Id.* at 1493. The court also stated that there was no justification for the "examination of Noriega's conversations without prior court knowledge and authorization," reasoning that this ran counter to the rule's unambiguous placing of pretrial production within the discretion of the court. *Id.* "This is to ensure that subpoenas are not used for impermissible discovery, which is more likely to be the case when advance production of materials is sought...." *Id.*

▮▮▮ The court in *Noriega* reasoned that the provision of Rule 17(c) for motions to quash would not always check the abuse of the rule. The court stated correctly that it was "wishful thinking to expect that prison officials will either oppose a government-requested subpoena which implicates an incarcerated defendant's interests or else enable the defendant to file his own motion to quash by notifying him that such subpoenas have been issued." *Id.* The court contrasted the prison's response to subpoenas obtained by the defendant, which it promptly moved to quash, with its response to government subpoenas, which it honored. *Id.* at 1493 n. 14. This scenario reveals the possibilities for abuse of Rule 17(c) inherent in its provision for pretrial production. Because of these problems, the court believes that Rule 17(c) requires applications for subpoenas requiring the production of documents prior to court proceedings.[5]

Because Rule 17(c) requires applications for production in advance of court proceedings, the court next addresses the question whether Rule 17(c) permits *ex parte* applications. District courts have differed over this issue. *Compare United States v. Urlacher,* 136 F.R.D. 550, 552 (W.D.N.Y.1991) (holding that defendant was not entitled to *ex parte* application), *aff'd on other grounds,* 979 F.2d 935 (2d Cir.1992) *and United States v. Hart,* 826 F.Supp. 380, 381–82 (D.Colo.1993) (same, relying on *Urlacher*) *with United States v. Florack,* 838 F.Supp. 77, 79 (W.D.N.Y.1993) (casting doubt upon *Urlacher*) *and United States v. Reyes,* 1995 WL 412576 (S.D.N.Y. 1995) (criticizing *Urlacher* and finding *ex parte* procedure mandated by Rule 17(c) and its policy.) Focusing on the provision for motions to quash and the "innovative" Rule 17(c) procedure for inspection by the parties, the magistrate in *Urlacher* found intent "to distinguish between pretrial subpoenas *duces tecum* and trial subpoenas *ad testificandum* at least insofar as *ex parte* procedures are concerned" implicit in the scheme of Rule 17. 136 F.R.D. at 556. The magistrate concluded that the defendant had identified "no discrete interest" in having the application for issuance of the subpoena conducted *ex parte* when all other subsequent proceedings would be conducted in open court. *Id.* While the defendant making the application in *Urlacher* did not lack funds to pay the fees, the magistrate noted that "the defendant has asserted a right to proceed *ex parte* on the basis of a rule which grants that right only to indigent defendants in connection with trial subpoenas for witnesses and, perhaps, subpoenas *duces tecum* returnable upon the trial (not at the pretrial stage)." *Id.* at 557–58. The magistrate found that no such right existed. *Id.*

In another case out of the same district, the judge distinguished the *Urlacher* decision, concluding that the provision for *ex parte* applications for subpoenas *ad testificandum* should also apply to subpoenas *duces tecum. United States v. Florack,* 838 F.Supp. at 79. Otherwise, reasoned the court, the Hobson's choice crushed by the 1966 Amendment to Rule 17(b) would rise

---

5. The court notes that documents may be produced at court proceedings other than trials. *See, e.g., United States v. Florack,* 838 F.Supp. 77

(W.D.N.Y.1993) (materials to be subpoenaed in connection with a suppression hearing).

again, discriminating against indigent defendants seeking subpoenas *duces tecum. Id.* In reaching this conclusion, the court wrote that "a subpoena *duces tecum* is just a type of subpoena that can be issued either under Rule 17(a) if the applicant tenders the requisite fees or under Rule 17(b) if the applicant is indigent." *Id.* The court reasoned that the word "also" in Rule 17(c) meant that, in addition to requiring a person to attend, a subpoena may also require them to produce documents. *Id.* The court concluded that the procedures for motions to quash and pretrial review described in Rule 17(c) had no bearing on the *ex parte* nature of the proceeding. *Id.* Another court criticized *Urlacher*'s finding that the *ex parte* nature of the proceeding vanishes when the court orders the documents produced for inspection, noting that the court may not order their production. *Reyes,* 1995 WL 412576, at *3. If the court denied the application or did not order the documents produced for inspection by the parties, the applicant would have revealed trial strategy without any benefit. *Id.* (citing *Florack,* 838 F.Supp. at 80). The court agrees with these criticisms of *Urlacher.*

*Urlacher* also relied upon concerns regarding public access to court proceedings in denying an *ex parte* proceeding. *See* 136 F.R.D. at 556. However, in this court's view these concerns overemphasize the public nature of the post-issuance process over the necessary secrecy of the pre-issuance application process. The secrecy of the pre-issuance process is not a burden on free access to the courts, and it does not contravene the scheme of Rule 17(c). Indeed, it supports the rule's provision for the issuance of subpoenas and pretrial production of documents at the court's discretion. During or after the application process for a pretrial subpoena *duces tecum,* the court may order an *in camera* review of the documents. At the end of the application process, a judge may deny or modify the application, having found an impermissible discovery purpose, and no further proceedings on the issue may occur. The judge may also order the documents produced to the court and "permit the books, papers, documents or objects or portions thereof to be inspected by the parties and

their attorneys." Fed.R.Crim.P. 17(c). Given these options, secrecy is necessary until the court reaches a decision on production of the documents.

Reviewing applications for subpoenas *duces tecum,* a court needs no assistance in applying the *Nixon* standard. Regardless of what happens once the subpoena issues, the court's decision in the first instance to issue the subpoena should approximate where possible the blank subpoena provided for in Rule 17(a) and the Rule 17(b) *ex parte* procedure simulating the blank subpoena. Otherwise, the reigning in of abuses of Rule 17(c) would compel premature disclosure of trial strategy. Just because the decision to allow pretrial production is left to the court does not mean that it should be heard in an adversary proceeding. Accordingly, the magistrate did not err in conducting the proceedings surrounding the issuance of the subpoenas *ex parte.*

## CONCLUSION

For these reasons, the court finds no error in the process used by the magistrate to issue the subpoena to Queen's and Castle. However, because the court has found that the subpoenas impermissibly sought impeachment materials before trial, the court REVERSES the magistrate's orders issuing the subpoenas. Further, the court finds that the magistrate erred in finding that the Government lacked standing to move to quash the subpoena to Queen's. The court orders the documents and all copies made returned to Castle and Queen's, with the exception of those documents placed under seal in the court files.

IT IS SO ORDERED.