**UNITED STATES of America,
Petitioner-Appellant,**

v.

**Marcus Robert CASTANEDA,
Respondent-Appellee.**

No. 77–3349–A.

United States Court of Appeals,
Ninth Circuit.

Dec. 29, 1977.

---

## ON FINAL REPORT

CHAMBERS, Circuit Judge:

This report will assume one's familiarity with my interim report filed herein on December 5, 1977, 9 Cir., 571 F.2d 444.

The hearing on the conduct of the attorneys in the case was resumed in open court on December 9 and concluded that day.

I now find one overriding factor which greatly influences my conclusions. It is this: I see no inconsistency in the denial by Judge A of the government's petition for a stay on the morning of October 7, 1977, and the granting by Judge B of a stay order on the government's amended petition on October 11, after a hearing on October 10, a holiday. Thus, assuming Judge B was misled as to one fact (which if he was misled, I find inadvertent) it did no harm.

Although Judge A on October 7 gave no reasons (simply "Denied"), I would have denied the petition on the ground that the threat of a jail door or other sanction in the nature of contempt was yet too remote. On the other hand, when the expanded petition was presented to Judge B on October 10, an "order to show cause re: contempt" had been filed as of 5:01 p.m. October 7, with hearing set for the afternoon of October 11. By this time, the judge in Courtroom 10 was proceeding with dedication. The jail doors were actively yawning for several members of the United States attorney's staff (or at least other painful sanctions were about to happen). So it would have been a serious abuse of discretion if Judge B had not entered the stay order on the morning of October 11 on the expanded petition.

As indicated above and also in the interim report, I accept the claim of the United States attorney's staff that they did not intentionally mislead Judge B and accept it that they do not believe they misled Judge B.

Believing that, to call Judges A and B to testify, would not be fruitful, I decline to further prolong this spectacle.

If the assistant public defender had recognized that he necessarily was proceeding civilly under the All Writs Act, I believe that he would have seen a lot of notice to the United States attorney was required.

But for the earlier failures to give notice by the public defender, I would censure the United States attorney for failure to take the public defender along to see Judge B on the morning of October 11 when the stay order was finally obtained. On the morning of October 11, the United States attorney could have found the public defender and taken him along to see Judge B. The United States attorney had made and failed on reasonable efforts to get the public defender before Judge B at the October 10 hearing.

I regret that in my hearings the public defender has felt "put upon." But I hope that he will reflect and see that there is some merit in the conclusions of the interim report of December 5, 1977.

I offer the following preachment to both sides which my wise father, who had been a judge before I began my practice of law with him, used to give me. He used to say: "On the subject of 'notice,' don't skip notice simply because you think the statute or the rules don't require it. Test it by whether you think the other side would have liked to have known. If they would have liked to have known, give them the notice. Ex parte victories usually mean two-thirds of the time you will lose later if your opponent has been offended by lack of notice."

The United States attorney ought to take steps to moot the underlying case even if the public defender will not cooperate. Both sides can find a better case than this one to let blood over and in which they can resolve the issues of law they think involved here.

In sum, let it not happen again.