UNITED STATES of America, Plaintiff,

v.

John S. NAJARIAN, Defendant.

Crim. No. 3–95–45(1).

United States District Court,
D. Minnesota,
Third Division.

Sept. 15, 1995.

Peter Jeffrey Thompson, Thompson Lundquist & Sicoli, Mpls, MN, for defendant.

Henry Joseph Shea, III, Janet A. Newberg, U.S. Attys. Office, Mpls, for U.S.

ERICKSON, United States Magistrate Judge.

## I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's *ex parte* Motion for the issuance of two Subpoenas *duces tecum,* which are returnable in advance of the trial of this matter, and for the sealing of the Motion papers and any resultant Court Order.

The issues have been submitted upon the Defendant's Motion papers and, for these purposes, the Defendant has appeared by Peter Thompson, Esq. Given its *ex parte* posture, no appearance has been afforded the Government.

For reasons which follow, we grant the Motion for the issuance of the Subpoenas in part, and we deny the Motion to Seal.

## II. *Background*

The Defendant requests the issuance of Subpoenas, for the production of documentary evidence or objects, that are in the possession of the Custodian of Records at First Bank St. Paul ("First Bank"), or in the possession of the Custodian of Records at the University of Minnesota ("University"). As to First Bank, the Defendant requests the production of "items of deposit" with respect to:

1. Account # 302 0979 8722 in [the] name of John S. or Mignette Najarian for calendar year 1994 including deposit slips and deposited items;

2. Account # 292–2348698 in the name of John S. or Mignette Najarian for calendar years 1988–1994 including deposit slips and deposited items.

With respect to the University, the Defendant seeks the production of the following:

1. Coopers & Lybrand Report and back-up documents;

2. Back-up documents to the President's Public Report of October, 1993;

3. Dr. Najarian's travel summaries and backup documents referred to in the preliminary report of February, 1995;

4. Account information including deposits, expenditures and transfers for the following University of Minnesota accounts:

647–6060

647–6070

674–6122

0697–5986

0933–4607

along with the same information for predecessor or successor accounts for 1988 through the present; and

5. Witness statements as indexed on the attached list delivered to the Academic Misconduct Panel (*see,* Ex. 1).

Attached to the University's Subpoena, as Exhibit 1, is a listing of 46 "interviews" which, apparently, had been undertaken by the University's legal counsel, Hogan &

Hartson, as a part of the University's disciplinary proceedings against the Defendant. Among the listed interviews is one obtained from the Defendant.

Each of the Subpoenas is returnable to Courtroom No. 4 of the United States Courthouse, in Minneapolis, Minnesota, on September 26, 1995, at 10:00 a.m.—which, not coincidentally, is the date, time and location of the non-dispositive Motions Hearing that this Court has scheduled. Each of the Subpoenas, however, contains the following legend:

> This Subpoena may be complied with by providing the documents requested to [defense counsel] prior to the return date.

The Subpoenas each have been duly executed and sealed by the Clerk of this Court.

Arguing that the "motion reveals the defense and because the United States has no standing regarding a subpoena to a third party, the defendant submits this motion *ex parte* and requests that it be placed under seal." As to relevancy, the Defendant contends that the requested information will help defense counsel to understand the flow of funds in the University's accounts and to determine the Defendant's actual travel expenses—information which would directly relate to the Government's accusation that the Defendant embezzled University funds through his travel arrangements. As to these same items, the Defendant continues:

> Such items can allow us to effectively challenge by cross-examination the government's financial theories as well as determine the true and complete financial picture for Dr. Najarian. We have received some limited information about the accounts from the University's outside counsel, but at a rate that will not allow us to complete preparation for the January 8, 1996 trial date.

In addition, the Defendant has advised that the witness statements taken by the University are needed because of the unavailability of certain of those witnesses due to their death or their refusal or reluctance to speak with defense counsel. According to the Defendant, "[a] review of these witness interviews will materially aid in allowing a timely preparation for trial." The Defendant fur-

ther contends that the voluntary production of the Defendant's records at First Bank has essentially been completed, but that a Subpoena would "greatly facilitate" the receipt of those documents that have not been forthcoming.

Anticipating that the University might seek to be heard on the propriety of the Defendant's document requests, the Defendant has scheduled the return date, for each of the Subpoenas, to coincide with the previously scheduled Court Hearing so that any objections, or Motions to Quash, might be heard at that time.

### III. *Discussion*

**A.** *Standard of Review.* The Defendant seeks the issuance of the Subpoenas in question under the authority of Rule 17(c), Federal Rules of Criminal Procedure, which provides as follows:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

In *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 678, 95 L.Ed. 879 (1951), the Supreme Court made clear that "Rule 17(c) was not intended to provide an additional means of discovery." Rather, "[i]ts chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials." *Id.* (emphasis in original).

▮ Following *Bowman*, the Courts have routinely followed the test formulated in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952), when deciding whether to require the production of documents prior to

trial. Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–3104, 41 L.Ed.2d 1039 (1974). Accordingly, in order to carry its burden, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700, 94 S.Ct. at 3104.

 B. *Legal Analysis.* Since we find no deficiency in the specificity of the Subpoenas at issue, our analysis turns to the elements of relevancy and admissibility. Given the vacuum created by the *ex parte* nature of the Defendant's application, the relevance and, more particularly, the admissibility of the requested documents is inescapably uncertain. While we have no difficulty in accepting that the accounts of the First Bank and of the University, which detail the Defendant's travel expenses, are likely to be admitted as evidence during the trial of this matter, we have substantial doubt that the "back-up documents to [President Hasselmo's] Public Report of October, 1993" or, with one exception, the noted "witness statements," are either relevant or admissible to the issues to be tried.[1] In the absence of a persuasive showing, we conclude that these specific requests are more in the nature of a "treasure hunt" than they are a legitimate effort to review any evidentiary submissions that are reasonably expected to be admitted at trial. Therefore, with respect to the scope of the Subpoenas, we authorize the issuance of the Subpoena to First Bank as proposed

by the Defendant, but we restrict the scope of the Subpoena, that has been proposed for the Records Custodian at the University, to those records that have been detailed in numbered paragraphs 1, 3, and 4, and we authorize the production of the Defendant's statement to counsel from Hogan & Hartson.

We also direct that the legend contained on each of the Subpoenas—to the effect that production can occur outside of the Court's presence—be deleted. As we read the plain language of Rule 17(c), the documents being subpoenaed are "to be produced before the court." Unquestionably, Rule 17(c) reveals an express intent that the Court supervise the production of evidentiary materials in advance of trial. Indeed, but for the Defendant's request that the documents be produced prior to trial, the Rule intimates no particular need to secure the Court's intervention as a part of the subpoena *duces tecum* process. Of course, the production of documents, outside of the Court's presence, would entirely defeat any attempt on our part to manage and facilitate the orderly screening of documentary trial evidence.

Lastly, we are troubled by the *ex parte* nature of the Defendant's application. While we understand the Defendant's concern, that his defensive strategies and work product might be divulged unless his request for the Subpoenas can be insulated from the Government's view, such a concern, however real, is unalterably short-lived. In this instance, the Defendant contemplates an objection from the University and, quite properly, has scheduled the return date of the Subpoena so as to facilitate the Court's resolution of an anticipated Motion to Quash. Undoubtedly, the Government is entitled to participate in that exchange, should it arise, and Rule 17(c) expressly contemplates the review of documents so subpoenaed by the other parties to the dispute. Accordingly, whatever secrecy might now be imposed upon the scope of the Defendant's document request would, of ne-

---

**1.** On the record before us, we have no means of knowing whether the statements were sworn, or whether they were subject to some exception to the Hearsay Rule. The mere fact that a witness is unavailable does not render admissible all of that witness's prior written statements. *United States v. Nixon,* 418 U.S. 683, 700–01, 94 S.Ct.

3090, 3103–04, 41 L.Ed.2d 1039 (1974). On the other hand, the statement of the Defendant, which was secured by Hogan & Hartson, may be admissible for some purposes, and should be produced. See, *Rule 801(d)(1)(B), Federal Rules of Evidence.*

cessity, be fleeting. Frankly, we regard the Defendant's interest in proceeding *ex parte* as being largely attributable to some misperception of the purpose to be served, by the production of documents in advance of trial, as contemplated by Rule 17(c).

We have yet to uncover any authority to support the proposition that Rule 17(c) is a broad adjunct to Rule 16, Federal Rules of Criminal Procedure, in ferreting out information which may be either relevant or admissible, and the Defendant draws none to our attention.[2] Rather, the authority is compellingly to the contrary. See, *United States v. Nixon,* supra at 698, 94 S.Ct. at 3102; *Bowman Dairy Co. v. United States,* supra, 341 U.S. at 220, 71 S.Ct. at 678 ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest of terms."); 2 *Wright, Federal Practice and Procedure: Criminal* § 274 at 153 and n. 16 (1982) ("[I]t has always been clear that Rule 17(c) was not intended as a discovery device * * *."), and cases cited therein. Of course, we need not hold, and do not hold, that every Subpoena *duces tecum* requires a disclosure of its contents to the opposing party, for Rule 17(c) does not evince any such intent. Rather, we only decide that, when the Rule is utilized for the disclosure of evidentiary materials in advance of trial, the application should be reviewable by the other parties to that proceeding. In *United States v. Urlacher,* 136 F.R.D. 550, 555–58 (S.D.N.Y.1991), the Court thoroughly addressed the impropriety of such an *ex parte* request, leading one of the eminent treatises to conclude that, "[i]f a

[Rule 17(c) ] Motion is made it cannot be ex parte." 2 *Wright, Federal Practice and Procedure: Criminal* § 274 at p. 46 of 1995 Pocket Part; see also, *United States v. Hart,* 826 F.Supp. 380, 381 (D.Colo.1993) (Rule 17(c) negates any assumption that production should be on an ex parte basis). While we are not inclined to be so categorical, we would merely note that, in our view, the evidentiary documents, which the Defendant may appropriately request, do not, even inferentially, disclose any of his work product or litigation strategies.[3]

■ Unfortunately, time constraints impair our ability to place the ox before the cart. With an abundance of time, we would have preferred to limit our ruling to the Defendant's request for leave to present his Motion *ex parte.* In the interests of expediency, however, and because our review satisfies us that the reformed scope of the Defendant's Subpoenas is consistent with the intent and purposes of Rule 17(c), we believe it prudent to allow the issuance of the modified Subpoenas so as to afford the Defendant a reasonable time in which to review the documents requested.[4] In doing so, we recognize that the Defendant may disagree with our ruling on the scope of the Subpoenas we authorize, or on his privacy request. In order to preserve the Defendant's privacy interest, in the event that he chooses to appeal our decision, we will seal his Motion papers, and this Order, until **September 20, 1995.** Such a Stay in the public release of the Order will allow the Defendant to approach the District Court, the Honorable

---

**2.** We are mindful that other subparagraphs of Rule 17 implicitly allow for, or expressly permit, an *ex parte* application for testimonial Subpoenas. Obviously, when such a procedure was intended, the framers of the Rule have clearly made their intentions known. No similar intent is so much as intimated in the language of Rule 17(c).

**3.** Of course, an *ex parte* application, for the production of documents in advance of trial, would fare no better if it emanated from the Government under like or similar circumstances. Whatever else may be said of Rule 17(c), it is unqualifiedly even-handed in its approach. More importantly, if the restrictions of Rule 17(c), upon full-bodied discovery in criminal proceedings, should appear to be unduly constrain-

ing, then the answer would seem to lie in its amendment so as to provide for a more expansive exploration into the documentary evidence of third-persons. We note, however, that in the half-century or so, in which Rule 17(c) has been operative, the provisions at play here have not been the subject of any substantive modification. Lastly, we suspect that, given the breadth of the Defendant's proposed Rule 16, Jencks Act and *Brady*-type discovery, the critical information that he seeks to obtain through Rule 17(c), will be accessible through other readily available avenues.

**4.** To assure expedition, this Order will be issued to the Defendant by facsimile communication to his counsel of record.

Richard H. Kyle presiding, with an *ex parte* appeal, if he chooses to do so. Of course, the District Court may choose to extend the period of the Stay but, in the absence of such an extension, the Clerk of Court shall unseal the referenced documents, and shall issue a copy of this Order to the Government at **4:30 p.m., on September 20, 1995.**

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion for the issuance of two Subpoenas *duces tecum* [Docket No. 113] is GRANTED, but only in the form allowed in the text of this Order.

2. That the Defendant's informal Motion to seal his Motion papers and this Order [Docket No. 114—Memorandum in Support of Defendant's Ex Parte Motion for Issuance of Subpoenas] is GRANTED, but only **until 4:30 p.m., on September 20, 1995.**

3. That, in the absence of a further Order of the Court, the Clerk of Court shall unseal the Defendant's Motion papers, and this Order, **at 4:30 p.m., on September 20, 1995,** and shall issue a copy of the Order to the Government, through its attorney of Record, by facsimile communication.