UNITED STATES of America, Plaintiff,

v.

**Douglas TOMISON and James Zimmer, Defendants.**

**CR. No. S–96–427 LKK.**

United States District Court,
E.D. California.

June 30, 1997.

---

Donald Searles, Assistant United States Attorney, Sacramento, CA, for Plaintiff.

Ted W. Cassman, Cooper, Arguedas & Cassman, Emeryville, CA, for Defendant Tomison.

William Goodman, Topel & Goodman, San Francisco, CA, for Defendant Zimmer.

## ORDER

KARLTON, Chief Judge Emeritus.

The defendants in the above–captioned case sought subpoenas duces tecum directed to various third parties requiring the pretrial production of documents pertaining to their defense. Claiming that Fed.R.Crim.P. 17(c) authorized the procedure, their motion was made ex–parte and sought the sealing of the motion and the supporting documents asserting that serving those documents upon the government would reveal their likely strategy at trial. The Court granted the motions to seal and authorized issuance of the subpoenas. Now Pending before the court are motions seeking to quash brought by the

government and two of the recipients of the subpoenas. I address the motions in turn.

## I.

### THE GOVERNMENT'S MOTION

The government's motion raises two related but distinct questions. First, does Fed. R.Crim.P. 17(c) permit or require the court to entertain an ex–parte application for pre–trial production of subpoenas duces tecum under the facts and circumstances of this case? Second, does the government have standing, under either the Constitution or Rule 17(c), to move to quash or modify these subpoenas. I turn to the ex parte issue first.[1]

1. Even if the defendant need not provide the government with notice of its application, the government may, as happened in the matter at bar, learn of the subpoenas from the recipient. Thus, whether or not Rule 17(c) permits an ex parte proceeding relative to obtaining the subpoenas, the question of whether the government has standing to move to quash must also be resolved.

2. The pertinent sections of Rule 17 read as follows:

"**(a) For Attendance of Witnesses; Form; Issuance.** A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate judge in a proceeding before that magistrate judge, but it need not be under the seal of the court.
**(b) Defendants Unable to Pay.** The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed on behalf of the government.
**(c) For Production of Documentary Evidence and of Objects.** A subpoena may also command the person to whom it is directed to

## A. EX PARTE APPLICATIONS UNDER RULE 17(c)

Rule 17(c) provides a process by which federal courts can issue subpoenas duces tecum for the production of evidence before trial. See Fed.R.Crim.P. 17(c).[2] The issue presented is whether the Rule authorizes and/or requires a district court to entertain an ex parte application for a subpoena duces tecum to be served on a third party when the moving party seeks that the subpoena be made returnable before trial.

While various district court opinions address the problem, neither the parties, nor the court in its own research, have located any binding authority, or any circuit court decisions for that matter, on point. See United States v. Beckford, 964 F.Supp. 1010, 1025 & n. 16 (E.D.Va.1997) (compiling cases addressing the question).[3] Without binding

produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."
See Fed.R.Crim.P. 17(a)–(c).

3. The only case emanating from the Ninth Circuit addressing ex parte hearings under Rule 17(c) is United States v. Castaneda, 571 F.2d 444 (9th Cir.1977), opinion supplemented, 571 F.2d 448 (9th Cir.1977). In Castaneda, the Chief Judge appointed Judge Chambers to investigate potential ethical violations by the United States Attorney in a "case" brought by a federal prisoner seeking to protect the prisoner from internal investigations of a prison murder. In his interim report, Judge Chambers opined in passing that the prisoner could not apply for a subpoena duces tecum directed to the warden ex parte. Id. at 446. The case has no binding authority since it is the opinion of one judge and thus not an opinion of the Ninth Circuit. As persuasive authority, it carries little weight since the opinion is an interim report in the context of an ethics examination and did not arise in the course of a case or controversy, insofar as it dealt with the 17(c) issue it is not certain that even if it were a decision in a true lawsuit it would be a holding rather than dicta, and in any event it is inapposite because the discovery was sought from the government, a party to the action if there had been one, and thus governed by Rule 16(a)(1)(C) as well as Rule 17(c). Id. at 446; see note 14, infra.

authority, the task becomes one of construction for which the court employs the ordinary cannons of interpretation. *See Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal. 1988) (citing *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982) & *Brown v. Baden,* 815 F.2d 575, 576 (9th Cir.) (per curiam), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)).

Under the plain meaning rule, the interpretive analysis begins with the text itself. *See Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992) (citations omitted). If intent cannot be ascertained from the language of the Rule alone, then the court may invoke other aids of textual interpretation, including extrinsic aids. *See Catholic Social Services, Inc. v. Meese,* 664 F.Supp. 1378, 1383 (E.D.Cal. 1987). The court may only resort to extrinsic aids if textual means do not resolve the issue. *Id.* at 1382; *and see Germain,* 503 U.S. at 254, 112 S.Ct. at 1149–50. The ultimate task is to interpret the intent of Congress and to give effect to that intent. *See Tello,* 677 F.Supp. at 1440 (citing *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1032 (9th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987)).

Judge Payne of the Eastern District of Virginia has recently concluded that the text of Rule 17(c) does not itself resolve the question of whether a party can make an ex parte request. *Beckford, supra,* at 1025–27. Following Judge Payne's analysis, I likewise conclude that the text of the Rule does not resolve the issue.[4]

Put bluntly, the fact of the matter is that the Rule simply does not address the issue of ex parte application. *See Busic v. United States,* 446 U.S. 398, 407, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980) (An ambiguity exists where "[p]lainly the text of the statute fails to address the issue pertinent to decision of these cases."). This silence lends itself to multiple conclusions.

On the one hand, the portion of Rule 17(c) governing the production of evidence prior to trial does not explicitly provide for an ex–parte hearing. That omission is made more conspicuous by the specific inclusion of an ex parte hearing process in Rule 17(b). *See United States v. Najarian,* 164 F.R.D. 484, 488, n. 2 (D.Minn.1995); *United States v. Urlacher,* 136 F.R.D. 550, 555 (W.D.N.Y. 1991).[5] Some district courts have held that this textual omission evidences a congressional intent to distinguish between pre–trial subpoenas duces tecum and trial subpoenas ad testificandum with regard to ex parte proceedings, and thereby forecloses the possibility of an ex parte application for the production of documents prior to trial. *See Urlacher,* 136 F.R.D. at 555; *United States v. Hart,* 826 F.Supp. 380, 381 (D.Colo.1993); *United States v. Stewart,* 1997 WL 103700 (E.D.Pa.1997).[6]

On the other hand, the text itself does not explicitly speak to the possibility of an ex parte application for subpoenas duces tecum produced prior to trial. *See Beckford, supra,* at 1026–27. As I now explain, this omission underscores other ambiguities in the text which, taken together, evidence a need to move beyond the language itself to deter-

---

**4.** Much of the following opinion relies on *Beckford* and this court wishes to express appreciation for Judge Payne's thorough and illuminating effort.

**5.** The rationale for providing ex parte applications in Rule 17(b) is inapplicable to the matter at bar. Rule 17(a) enabled parties with financial resources to secure ex parte subpoenas for production at trial. The ex parte procedure was added to Rule 17(b) so that indigent defendants would be on the same footing as other defendants and the government when deciding whether to apply for a subpoena for production at trial. *See* Advisory Committee Notes to 1966 Amend-

ments; *see also United States v. Beckford,* 964 F.Supp. 1010, 1014–16 (E.D.Va.1997); *United States v. Urlacher,* 136 F.R.D. 550, 553–54 & 555 (W.D.N.Y.1991). Unlike the production of witnesses or evidence at trial, the question here is whether Rule 17(c) allows anyone, with or without financial means, to apply ex parte for pre-trial production of documents.

**6.** *Stewart* is weak authority since it involved the government's attempt to secure a subpoena ex parte which the court found was unnecessary in light of the concession that the defendant had a right to view the documents, and the lack of a need for secrecy.

mine whether Rule 17(c) authorizes ex parte applications.

One ambiguity arises from the last sentence of Rule 17(c). *See* note 2, *supra.* Some district courts have held that this sentence prohibits an ex parte application because it contemplates the review by other parties of documents subpoenaed pre–trial. *Najarian,* 164 F.R.D. at 487 ("Undoubtedly, the Government is entitled to participate in that exchange"); *Urlacher,* 136 F.R.D. at 555–56 ("[the] provision for pretrial production under supervision of the court and upon terms which permit inspection by the parties and their attorneys, clearly suggests, if not compels, a conclusion that litigation concerning issuance of and compliance with subpoenas duces tecum be conducted upon notice, and not in secret.") (internal quotations omitted); *Hart,* 826 F.Supp. at 381 ("The plain language of rule 17(c) could not be clearer.... There can be no right to an ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties to inspect them prior to trial.").[7] While these arguments may carry some initial appeal, upon a closer examination of the text, it appears to this court that they ignore the plain words of the provision.

Rather than "expressly contemplat[ing] the review of documents by the other parties to the dispute," *Najarian,* 164 F.R.D. at 487, Rule 17(c) by its terms is permissive, providing that the court "may" order production of documents and "may" permit inspection by the adverse party. *See United States v. Reyes,* 162 F.R.D. 468, 471 (S.D.N.Y.1995). Since the Rule itself contemplates that the court "may" permit inspection by the parties of documents produced before trial, it follows that the Rule empowers the court to deny an adverse party the opportunity to inspect the documents. *See United States v. Florack,* 838 F.Supp. 77, 80 (W.D.N.Y.1993). Since prohibiting a party access to the documents may have the same practical effect as denying it the opportunity to know that such documents were subpoenaed, the Rule's structure appears to anticipate the possibility of an ex parte request.[8] Given that the court may decline to order pre–trial production of the documents altogether, it is possible that the portion of the Rule allowing for participation by the government would never be triggered.[9] It thus appears that the Rule may contemplate situations where the defendant has a right to an ex parte hearing as well as situations where the defendant does not. At the very least, the issue is not directly resolved by the text.

Another ambiguity arises because the text does not state whether anyone other than the party to whom the subpoena is directed has standing to bring a motion to quash. While it has been argued that the provision of a motion to quash or modify "clearly suggests" that a motion cannot be made ex parte, *see Urlacher,* 136 F.R.D. at 555–56, I cannot agree. By providing the basis for a motion to quash to be that "compliance" would be "unreasonable or oppressive," the language suggests that the party to whom the subpoena is directed is the only party

---

**7.** Citing *Urlacher* and *Najarian,* an eminent treatise has categorically concluded that "[i]f a [Rule 17(c)] Motion is made it cannot be ex parte." *See* 2 Wright, *Federal Practice and Procedure: Criminal,* § 274 at 48 (1997 supplement). Unfortunately, as I describe elsewhere, Professor Wright, a generally remarkably reliable guide, has had a tendency to announce suspect categorical statements concerning Rule 17(c). *See* note 14, *infra.*

**8.** Moreover, while permitting examination of the subpoenaed documents may provide the government with insight to the defense's strategy, it is not equivalent to providing the government with access to the documents filed by defendant justifying the subpoena in the first place. The latter

documents, because they must demonstrate relevancy, specificity and admissibility, *Beckford, supra,* at 1022–23, inevitably lay out the defendant's entire case as it stands at the time the subpoenas are sought. As I explain in the text, these considerations counsel a conclusion that ex parte motions are appropriate where the defendant makes a showing of the need for confidentiality.

**9.** Clearly because the request for the subpoena itself and the supporting documents will provide confidential information concerning trial strategy and witnesses, the need for an ex parte proceeding does not disappear merely because the court denies production. *See United States v. Reyes,* 162 F.R.D. 468, 470

with "standing" to oppose it.[10] This is because no matter what interest a party to whom the subpoena is not directed may have, it does not arise out of the difficulty of compliance.[11]

It is true that the question of standing is distinct from the question of whether a party can apply for a subpoena ex parte. *See United States v. Jenkins*, 895 F.Supp. 1389, 1393 (D.Haw.1995). Conceivably, the Rule could confer upon the government a right to notice of a Rule 17(c) request while at the same time it prudentially denies the government the right to oppose the request, even if the government lacks Article III standing to oppose the request.[12] Nonetheless, the issues are related, since the utility of notice would .be greatly undermined if the party entitled to notice could not participate in the process for which it received notice. *Cf. Reyes*, 162 F.R.D. at 471 (noting that the effect of a noticed hearing procedure would permit parties without standing to challenge a subpoena). Thus, the fact that the Rule may only allow the party subpoenaed to oppose the request indicates that the Rule presupposes that the motion for the subpoena is ex parte in the first place. Even if the language does not require such a reading, it leaves room for that construction, and thus serves to underscore the other ambiguities in the Rule discussed above. *See* Sutherland, *Statutory Construction*, § 45.02 at 6 (5th Ed.1992) ("Ambiguity exists when a statute is capable of being understood by reasonably well informed persons in two or more different senses.").

Since the text itself does not resolve the question of whether Rule 17(c) authorizes an ex–parte application for pre–trial production of evidence, the court must look to legislative history and other interpretative aids. *Catholic Social Services, Inc.*, 664 F.Supp. at 1383. The Advisory Committee notes are bereft of comment on whether the 17(c) motion is or may be ex parte. *See Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946) (Advisory Committee comments entitled to weight). Thus, the court will interpret the text of Rule 17(c) through a critical examination of the general purpose of Rule 17(c) as well as the constitutional framework within which the Rule operates.

Identification of Rule 17(c)'s purpose, as well as the constitutional backdrop, may be accomplished through an examination of the case law, since it is the judiciary which remains the final authority on questions of rule interpretation. *See, e.g., Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986).

Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951); *see also United States v. Nixon*, 418 U.S. 683, 698–99, 94 S.Ct. 3090, 3102–03, 41 L.Ed.2d 1039 (1974). An interpretation which would require the defendant to divulge his or her theory of the case as a prerequisite for pre–trial production would discourage the defendant from using the Rule in the first place. Indeed, requiring noticed motions would tend to encourage the defendant to wait until trial to seek production of documents and evidence. Especially in cases such as this one, where the amount

---

**10.** I use the word standing here in the prudential sense, rather than the Constitutional sense, because it is defined by the Rule itself rather than Article III concerns. *See* Discussion on the Government's standing, *infra*.

**11.** At oral argument, the government maintained that it must have a right to challenge the issuance of the subpoena because the recipient would neither have the information necessary or the interest in challenging the subpoena on the basis that it was improvidently authorized, *i.e.* that the defendants had failed to make the requisite showing. The argument does not appear well taken, given that the rule restricts the grounds for challenge to oppression and unreasonableness. Indeed, as noted, that restriction suggests that the government is not a party capable of challenging the subpoena.

**12.** Even if the Rule itself does not prohibit a party from moving to quash a subpoena, the party would still not have standing to make such a motion unless the subpoena would threaten a legitimate interest of the moving party. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.)(citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3rd Cir.1980)), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982).

of documentary evidence sought is large, such a practice could result in a delay of the trial. Thus, requiring a defendant to apply for the subpoena duces tecum by noticed motion could defeat the Rule's goal of facilitating the speed and efficiency of trial. Other considerations also suggest that an ex-parte practice under Rule 17(c) may be appropriate under some circumstances.

■ A criminal defendant has both a constitutional right to obtain evidence which bears upon the determination of either guilt or punishment, *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (Due Process Clause of Fourth Amendment requires prosecution to turn over exculpatory evidence) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) & *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976)), and a Sixth Amendment right to process.[13] Rule 17(c) implements both the right to obtain the evidence and to require its production. *See Beckford, supra*, 964 F.Supp. at 1018–19 (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.1988), *cert. denied sub nom., Martin Marietta Corp. v. Pollard*, 490

U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989)). In cases such as the matter at bar, where evidence relevant to guilt or punishment is in a third party's possession and is too massive for the defendant to adequately review unless obtained prior to trial, pretrial production through Rule 17(c) is necessary to preserve the defendant's constitutional right to obtain and effectively use such evidence at trial. *See United States v. Murray*, 297 F.2d 812, 821 (2d Cir.) (interpreting *Bowman* as saying that Rule 17(c) permits pretrial production if it is necessary for the moving party to use the material as evidence at trial), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962).[14]

■ In sum, the fact that a criminal defendant has both a right to the pre–trial production of evidence and a right to protect his trial strategy, contraindicates a noticed motion practice requiring disclosure to the government of the defendant's theory of the case as a precondition to obtaining subpoenas duces tecum under Rule 17(c).[15] Since a defendant seeking pre–trial production must make a demonstration of relevancy, admissibility and specificity, *see Nixon*, 418 U.S. at 700, 94 S.Ct. at 3103–04,[16] requiring that

---

**13.** The Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...."

*See* U.S. CONST. amend. VI.

**14.** The government has argued that to the extent defendants are using the Rule 17(c) subpoenas to discover evidence they are unjustified. The court observes that the defendants have cleared the three hurdles of relevancy, admissibility and specificity necessary to obtain pretrial production of documents. Nonetheless, the Supreme Court has observed that "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951). The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties. Although Professor Wright at one time suggested that use of 17(c) can never be justified on the basis of discovery, he now recognizes such a categorical statement is too broad. *See* 2 Wright, *Federal Practice and Procedure: Criminal*, § 274 at 50 (1997 Supplement); *see also United States v. Nixon*, 418 U.S.

683, 700, n. 12, 94 S.Ct. 3090, 3103, n. 12, 41 L.Ed.2d 1039 (1974) (reserving the issuing of whether the restriction on discovery applies "in its full vigor when the subpoena duces tecum is issued to third parties rather than government prosecutors.").

**15.** By virtue of the Fifth Amendment, the defendant has a right to discover evidence in the possession of the government bearing upon guilt or sentencing. While under Rule 16 the government now has limited discovery rights, it has never been suggested that the government's right to discovery is either constitutionally based or as broad as a defendant's. Whether this observation bears on the right of the government to ex parte applications for subpoenas duces tecum is for another day.

**16.** This showing derives from the four part test formulated in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952), and followed by the Supreme Court in *Nixon*, 418 U.S. at 699–700, 94 S.Ct. at 3103–04. The test requires the party moving for pre–trial production of documents to show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such produc-

defendant share the showing with the government would effectively force the defendant to reveal his or her theory of the case. *See Reyes,* 162 F.R.D. at 470. As Judge Payne observed, "[f]orcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the government places an unconstitutional limitation on the defendant's right to compulsory process." *Beckford, supra* at 1027. Thus, the need to preserve a defendant's constitutional right to obtain and use relevant evidence suggests that Rule 17(c) affords the defendant the right to pre-trial production in secrecy. *See, e.g., Jenkins,* 895 F.Supp. at 1397 (holding that secrecy is necessary until court reaches its decision on whether to produce documents).

While permitting a defendant to apply for a pre-trial subpoena duces tecum would further at least two fundamental goals of Rule 17(c),[17] certain district courts have determined that other concerns militate against permitting an ex parte application. The two principal concerns are the purported need to insure that Rule 17(c) is not used as a discovery device, *Najarian,* 164 F.R.D. at 488; *Hart,* 826 F.Supp. at 382, and to insure open access to the courts. *Urlacher,* 136 F.R.D. at 557–58; *Hart,* 826 F.Supp. at 382. As I now explain, while both these interests may have merit, they can either be protected by the court without participation from the government and/or they are outweighed by the defendant's constitutional right to full power and process.

It has been repeatedly suggested that ordinarily Rule 17(c) should not be employed as a discovery device. *See Bowman Dairy Co.,* 341 U.S. at 220, 71 S.Ct. at 678–79; *United*

*States v. Nixon,* 418 U.S. at 698–99, 94 S.Ct. at 3102–03. I have already explained that since that proposition rests upon the discovery provisions of Rule 16, *see* 2 Wright, *Federal Practice and Procedure: Criminal,* § 274 at 158 (1982), it may have little application where the defendant seeks documents from a third party rather than the government. *See* note 14, *supra.* Even assuming the full vigor of the objection in those circumstances, however, there is no reason to suppose that the government's participation is required to ensure that the court performs its duty in determining that the requisites for issuing the subpoena have been demonstrated, and that the party seeking the subpoena is not simply on a fishing expedition. *See Jenkins,* 895 F.Supp. at 1397 ("Reviewing applications for subpoenas duces tecum, a court needs no assistance in applying the *Nixon* standards."); *see also Beckford, supra,* at 1027–28; *Reyes,* 162 F.R.D. at 471.[18] As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose. *Bowman Dairy,* 341 U.S. at 221, 71 S.Ct. at 679; *see also United States v. Eden,* 659 F.2d 1376, 1381 (9th Cir.1981) (determination of whether to issue a subpoena is committed to sound discretion of trial court), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982).

It is of course true that courts often depend upon the adversarial process to reach the correct legal result. That useful process, however, must on occasion be subordinated to other values; thus, search warrants are issued ex parte, as are telephone taps, and on occasion temporary restraining orders.[19]

---

tion and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *Nixon,* 418 U.S. at 699–700, 94 S.Ct. at 3103–04.

**17.** The Southern District of New York has identified the need to preserve the source and integrity of evidence as an additional policy reason for allowing ex–parte applications. *See Reyes,* 162 F.R.D. at 470.

**18.** Of course one person's fishing expedition is another's exhaustive investigation. One can only

describe as brass the government's objection to "fishing expeditions," given its routine behavior relative to subpoenas duces tecum issued in connection with grand jury investigations.

**19.** That is not to say that even in this context the adversary system has no role to play. The government, of course, is a proper party to contest the admissibility of the documents at trial. Given that the Rule provides that the court may allow the parties and their attorneys to inspect the documents prior to trial, the court is free to exercise its discretion to allow the government to inspect subpoenaed documents, even if the initial application for the subpoena is made ex parte.

Finally, some courts have held that the public's right to access to the courts militates against ex parte applications under Rule 17(c). *See Urlacher,* 136 F.R.D. at 556–58. Thus, the *Urlacher* court observed that the First Amendment presumes a right of access to pre-trial criminal proceedings for which "the place and process have historically been open to the press and general public." *Id.* at 556 (quoting *Press–Enterprise Company v. Superior Court of California,* 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986)). While that may well be true, as I now explain, this is not such a procedure.

Given that this is pre–trial production process, it hardly fits as an historically open proceeding. The analogous process by which the government frequently obtains documents, the grand jury subpoena, is, after all, a closed proceeding. Indeed, Congress has in analogous situations provided the federal courts with the authority to determine, without participation from the adversary, whether a party can use government resources and mechanisms to develop his or her case. *See* 21 U.S.C. § 848(q)(9) (allowing habeas petitioner to apply for investigative funds ex parte upon a showing of the need for confidentiality). Moreover, one would think it clear that there is no public right of access to a criminal defendant's trial strategy. Accordingly, despite the *Urlacher* conclusion to the contrary, there is no reason to believe that "public access plays a significant positive role in the function of the particular process in question." *Urlacher,* 136 F.R.D. at 556 (quoting *Press–Enterprise Company,* 478 U.S. at 8–9, 106 S.Ct. at 2740–41). In sum, the right of access is only presumptive and not absolute; it may be outweighed when the court finds that disclosure is necessary to preserve overriding rights of criminal defendants. *The Oregonian Publishing Co. v. The United States Dist. Court of the Dist. of Or.,* 920 F.2d 1462, 1465–66 (9th Cir.1990), *cert. denied sub nom. Wolsky v. Oregonian Pub. Co.,* 501 U.S. 1210, 111 S.Ct. 2809, 115 L.Ed.2d 982 (1991).[20] It thus follows that a

public right of access is simply insufficient to deny the defendant the opportunity to proceed ex parte under Rule 17(c) where the court finds that an ex parte application is necessary to preserve the defendant's overriding constitutional rights to the court's process without revealing his trial strategy.

After the exhaustive examination conducted above, this court concludes that while the weight of authority disfavors ex parte applications under Rule 17(c), the cases asserting this view either rely upon readings of the text which failed to recognize ambiguities, place an undue emphasis on curtailing discovery abuses without acknowledging the ability of courts to enforce the standards without participation from the government, and/or apply qualified First Amendment principles without balancing overriding constitutional interests of the defendant. *See Najarian,* 164 F.R.D. at 487–88; *Urlacher,* 136 F.R.D. at 555–558; *Hart,* 826 F.Supp. at 381–82; *Stewart, supra,* 1997 WL 103700.

What than is left? An ambiguous text containing language which suggests ex parte applications in certain circumstances, a congressional purpose of avoiding delay, and a criminal defendant's constitutional right to full process. *See Beckford, supra,* 964 F.Supp. at 1014; *Reyes,* 162 F.R.D. at 470–71; *Jenkins,* 895 F.Supp. at 1396–97. Weighing these considerations, the court concludes that the Rule should be interpreted to provide for ex parte applications in situations, such as the matter at bar, where the defendant seeks to serve a subpoena duces tecum for the pre–trial production of documents on a third party, and cannot make the required showing without revealing trial strategy.

## B. THE GOVERNMENT'S STANDING TO MOVE TO QUASH THE SUBPOENAS

Even if Rule 17(c) did not permit defendants to apply for the subpoenas duces tecum ex parte, the government has not demon-

---

**20.** Indeed, the *Urlacher* court itself acknowledged that the defendant's interest against revealing trial strategy might outweigh the right of access, but did not find that such an interest existed because defendant did not proffer the issue and because defendant agreed that the government should inspect the subpoenaed documents before trial. *Urlacher,* 136 F.R.D. at 557–58.

strated standing to move to quash them. Since standing goes to the jurisdiction of the court, the government, as the party attempting to invoke the court's jurisdiction, has the burden of demonstrating that it has standing. *See KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 200–01, 81 L.Ed. 183 (1936); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986).[21]

■■ A party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests. *See Jenkins*, 895 F.Supp. at 1393; *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.) (citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3rd Cir. 1980)), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *see also Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.1985) (identifying proprietary interest as basis for standing). "In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents." *Beckford, supra*, at 1023 (citing *United States v. Reyes*, 162 F.R.D. at 470–71). As the Supreme Court has explained "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive' but not otherwise." *Nixon*, 418 U.S. at 698, 94 S.Ct. at 3103. Accordingly the government lacks standing to raise the exclusive grounds for quashing the subpoena, since it lacks the sine qua non of standing, an injury in fact relative to those grounds. *See, e.g., Gladstone Realtors v. Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) (injury in fact) *Tileston v. Ullman*, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943) (no standing to raise third party's injury).[22]

The government argues that it has standing because it is in the best position to assist the court in ensuring that Rule 17(c) is not being improperly used as a discovery device. *See* Government's Motion, filed May 22, 1997, at 3:17–4:14. For the reasons discussed above, the court must reject that basis for asserting standing. Moreover, the contention does not demonstrate that the government has any of the interests required for a party to have standing to quash a subpoena. There is no suggestion, nor could there be, that as to the government the subpoena is unreasonable or oppressive, nor a showing that its issuance will result in a delay of the trial. To the contrary, a subpoena returnable before trial will avoid delay in the government's prosecution of the case. *See Bowman Dairy Co.*, 341 U.S. at 220, 71 S.Ct. at 678–79. Thus, the government does not meet its burden of demonstrating that it has standing to move to quash or modify the subpoenas.[23]

## C. PRETRIAL EXAMINATION OF THE DOCUMENTS

Having concluded that the defendants under the circumstances at bar have a right to move for production from third parties ex parte, and that the government lacks stand-

---

**21.** It might be argued that the government does not need to demonstrate its own standing because the court already has jurisdiction over the motion to quash made by the third parties. Of course, the right of a third party to quash bears not at all on the government's right to participate in that proceeding.

**22.** The Seventh Circuit has held that the government has standing when there is a legitimate concern that the subpoena would unduly lengthen the trial, harass a government witness, or draw prejudicial overemphasis on a witness's credibility. *Raineri*, 670 F.2d at 712. I must respectfully disagree. While under such circumstances it is clear that the government has standing to object to the introduction of the evidence at trial, the issue here is the right to object to the pretrial production of the documents. In *Nixon*, the Supreme Court explained that the grounds relied upon by the Seventh Circuit are not available to quash the subpoena.

**23.** Even if the government could demonstrate that it had standing in the constitutional sense, it is unclear whether Rule 17(c) would permit the government to move to quash the subpoenas. Under the doctrine of prudential standing, Congress can limit a party's standing even if the Constitution would otherwise permit it. *See Gladstone Realtors v. Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). For the reasons discussed in the preceding section, *supra*, the second sentence of Rule 17(c) may reasonably be understood to preclude the government from asserting standing under the facts and circumstances of this case.

ing to move to quash, one final issue remains concerning the government relative to this order of production pursuant to Rule 17(c). The court must determine who may examine the documents produced and when.

The rule provides the court with discretion. *See* note 2, *supra*. The two values which appear to most directly inform the exercise of that discretion is the right of the defendant to confidentiality and the need to insure an efficient trial. Given these twin concerns, the court will order that defendants may inspect the documents within thirty (30) days of their delivery to the court. Defendants shall determine which documents they actually intend to introduce and shall supply copies to the government at the same time they make their Rule 16 discovery available to the government.

## II.

### THE RECIPIENT'S MOTION

I now turn to the motion to quash filed by the recipients of the subpoenas, (hereinafter "recipients"), UAE Energy Operations Corporation, and LeBoeuf, Lamb, Green and MacRaw, L.L.P., its lawyers (hereinafter LeBoeuf, et al.).

The motions to quash are premised on the contentions that the subpoenas (1) seek material protected by the attorney–client privilege, and/or attorney work product privilege, (2) seek confidential and private personal files, (3) are unreasonable and oppressive, and (4) do not provide a reasonable time to respond.

By or at oral argument the defendants and the recipients had resolved a number of the disputes. Thus, the recipients had agreed to produce to the court relative to the subpoena directed to United American Energy as follows:

No. 1 [24] limited to documents between United American Energy and/or Brand

and/or Chemical Waste within thirty days of the hearing held May 28, 1997; and

Nos. 2, 3, 4, 5, 7, 8 and 10 within thirty days of the hearing held May 28, 1997.

Subsequent to the hearing, recipients, by letter, indicated that they had reached an agreement with defendants concerning No. 6, which would be embodied in a stipulation. *See* Letter from LeBoeuf, et al. to court, dated June 3, 1997.[25]

Thus, the only outstanding issue relates to No. 9. As to that issue, the court finds that defendants have made a sufficient showing that the items are properly produced pursuant to Rule 17. Recipients argue two points, that the retrieval is burdensome and that at least some of those documents fall within the attorney–client privilege.

To the extent that recipient claims the materials sought are contained in the boxes in the Modesto facility and therefor burdensome, that concern is resolved by conditioning retrieval of those documents on the same basis as the stipulation that has been reached concerning No. 6, and the court will so order. To the extent that the attorney–client privilege is claimed that issue will be resolved below in connection with the motion of the lawyers, to which I now turn.

Defendants do not contest the general principle that a recipient may seek to quash a Rule 17(c) subpoena on the grounds that it seeks material protected by the attorney–client privilege. *See, e.g., In re Grand Jury Subpoena,* 31 F.3d 826 (9th Cir.1994). They do argue, however, that the privilege is to be applied in a grudging manner, extending only to that evidence clearly falling within the purview of the privilege and only when necessary to achieve the privilege's purpose. *See, e.g., In re Grand Jury Subpoena,* 31 F.3d 826 (9th Cir.1994) (citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) and *Tornay*

24. These numbers refer to the numbers found in the subpoenas ordering that various materials be produced.

25. The issue concerning No. 6 was the assertion by the recipients that the material sought was stored in a random fashion in boxes in a Modesto warehouse, and thus attempting to locate the

material was burdensome and unreasonable. The stipulation essentially puts the burden on defendants in that it will require them to examine the boxes for the material sought. As of the date of this order, the court has not received the stipulation.

*v. United States,* 840 F.2d 1424, 1426 (9th Cir.1988)); and *see United States v. Plache,* 913 F.2d 1375, 1379 (9th Cir.1990) ("The Attorney client privilege is strictly construed.").

■ Given that the attorney's initial filings were bereft of any factual showing, defendants argued the motion should be denied. At oral argument, the attorneys, apparently seeing the error of their ways, sought leave to supplement their previously nonexistent showing. The court granted leave, and they now have filed affidavits making a showing that certain notes of interviews with employees of their client (a) were prepared by one of the members of the firm; (b) were obtained by the attorneys pursuant to the direction of the corporation; (c) for the purpose of providing legal advice to the corporation; (d) that it was intended they were to be kept confidential, and (e) with one exception have not been revealed to anyone else.[26]

It is established that "[t]he attorney–client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to obtain legal advice." *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir.1996) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 390–94, 101 S.Ct. 677, 683–85, 66 L.Ed.2d 584 (1981)), *cert. denied sub nom. Tei Fu Chen v. United States,* — U.S. —, 117 S.Ct. 1429, 137 L.Ed.2d 538 (1997). It is also established that "fact–finding which pertains to legal advice counts as 'professional legal services' ". *United States v. Rowe,* 96 F.3d 1294, 1297 (9th Cir.1996).

Given the showing now made by the attorneys, the court concludes that the notes of the statements made to the attorneys falls within the privilege and has not been waived. Accordingly, the subpoena directed to LeBoeuf, et al. will be quashed, and to the extent that No. 9 of the subpoena directed to UAE Energy seeks the same material it also is quashed.

### III.

### ORDER

For all the above reasons, the court ORDERS as follows:

1. The government's motion to quash is DENIED;

2. UAE Energy shall produce to the court:

A. No. 1 limited to documents between United American Energy and/or Brand and/or Chemical Waste, not later than June 28, 1997;

B. Nos. 2, 3, 4, 5, 7, 8 and 10, not later than June 28, 1997;

3. UAE Energy shall permit examination of the records maintained at the facility in Modesto for items falling within Nos. 6 and 9 under the conditions provided for by the stipulation between the recipient and the defendants, except that the defendants may not seek or discover the documents falling within the material specified in the subpoena directed to LeBoeuf, et. al.

4. The motion directed to the subpoena served on LeBoeuf, et al. is GRANTED and the subpoena is QUASHED except as to the report of Robert Emery which shall be produced not later than ten (10) days from the effective date of this order;

5. Within thirty (30) days of production, the defendants shall examine the material produced;

6. Not later than the date the defendants make discovery under Rule 16, they shall provide the government with a copy of each document produced by virtue of these subpoenas that they intend to introduce into evidence in their case–in–chief; and

7. A Status Conference is SET for July 15, 1997 at 9:00 a.m. in Courtroom No. 1.

IT IS SO ORDERED.

---

26. The one exception is the report prepared by Robert Emery, which was supplied to the government. As to that document, the recipients acknowledge that the privilege has been waived and concede that production pursuant to the subpoena is proper. *See* Letter to court from LeBoeuf, et al., dated June 20, 1997. Accordingly, production of that document will be ordered.