**UNITED STATES of America,**
**Plaintiff,**

v.

**Donald P. FOX, Defendant.**

**No. 4:03CR3006–2.**

United States District Court,
D. Nebraska.

Aug. 11, 2003.

Lynnett M. Wagner, Assistant United States Attorney, Lincoln, Plaintiff's Counsel.

John C. Vanderslice, Assistant Federal Public Defender, Lincoln, Defense Counsel.

1. Fox's previous motion to suppress (filing 22) claimed that the state trooper lacked reasonable suspicion or probable cause for the stop, and that he unreasonably detained the defendant; it was also claimed that the drug-sniffing dog was unreliable, and that its posi-

**1007**

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the government's statement of appeal (filing 97) from an order that was entered by Magistrate Judge Piester (filing 96) denying the government's "objection to issuance of subpoenas" (filing 92). Reviewing the order pursuant to 28 U.S.C. § 636(b)(1)(A) and NELR 72.3, I find that the government's statement of appeal should be sustained in part.

### I. Background

The defendant, Donald P. Fox, is charged with possession of marijuana with intent to distribute. On May 2, 2003, he filed a motion to suppress all physical evidence and statements obtained following a traffic stop of his rented vehicle on Interstate 80, claiming that the state trooper's actions in stopping the vehicle and in requesting the assistance of a canine detection unit were racially motivated. Fox is black. According to Fox's motion, evidence that was presented at a hearing on an earlier motion to suppress showed that 9 out of 12 traffic stops where this trooper requested canine assistance involved racial minorities.[1]

Fox's motion requested that "any evidentiary hearing be set at least 30 days following today's date to permit counsel a reasonable opportunity to obtain further information and records regarding [the trooper's] propensity for effecting traffic stops based upon racial profiling." (Filing 51.) A hearing on the motion before Magistrate Judge Piester was originally scheduled for May 20, 2003, but was twice con-

tive indication of drugs in the vehicle was merely a reaction to its handler's movements. Adopting a report and recommendation by Magistrate Judge Piester (filing 73), I denied the motion to suppress on June 13, 2003 (filing 88).

tinued, at the defendant's request, until August 6, 2003. (See filings 55, 67, 91.) Both of the defendant's motions for a continuance cited a need for additional time to obtain records. Thus, the first motion, filed on May 13, 2003, stated that "[c]ounsel has sought additional information related to [the trooper's] vehicle stops over the past two years.... Further investigation will need to be completed related to the information now sought from the Nebraska State Patrol." (Filing 65.) The defendant's second motion for a continuance, filed on June 11, 2003, was even more particularized, stating that "[c]ounsel has served two subpoenas duces tecum upon the Nebraska State Patrol obtaining various information related to [the trooper's] traffic stops. On yesterday's date, counsel filed a third subpoena duces tecum seeking additional information regarding [the trooper's] traffic stops, as well as information from the Nebraska Crime Commission related to racial profiling data compiled pursuant to Nebraska statute." (Filing 83.)

On June 20, 2003, a few days after the second continuance was granted, the government filed its "objection to issuance of subpoenas," which provides:

Comes now the United States of America, by and through the undersigned Special Assistant United States Attorney, and objects to the proposed issuance of subpoenas by Defendant Fox, as follows:

1) The Defendant's attempt to preclude the Nebraska State Patrol and the Nebraska Crime Commission from discussing or providing copies of the Defendant's subpoenaed materials by use of sealed subpoenas.

2) The subpoenas are overly broad and burdensome on the Nebraska State Patrol, the Nebraska Crime Commission, and the Office of the United States Attorney.

3) In the alternative, the Court should require the Defendant to provide copies of all materials received from the Nebraska State Patrol or Nebraska Crime Commission in advance of the motion hearing so that the U.S. Attorney's office may adequately prepare and avoid further continuances of the hearing.

The Government requests that the Court deny the Defendant's proposed subpoena ducus [sic] temem [sic] of the Nebraska State Patrol and Nebraska Crime Commission, and set a hearing regarding the scope and nature of the Defendant's proposed sealed subpoenas ducus [sic] tecum to the Nebraska State Patrol and Nebraska Crime Commission.

(Filing 92.)

On July 1, 2003, Magistrate Judge Piester entered an order that provided: "To the extent that filing 92 may be construed as a motion, it is denied." (Filing 96.) He stated: "The subpoenas have been issued and served. No motion to quash or limit their scope has been filed by the deponents. No showing has been made that compliance will be burdensome to the deponents or to the government. It is not known how the government even learned about the subpoenas, since they were filed under seal; presumably the deponents or their attorney notified the government's counsel about their existence and service." (Id.)

It appears from the government's supporting brief (filing 93) that the "objection to issuance of subpoenas" was made with respect to an "ex parte motion for issuance of subpoenas duces tecum in forma pauperis" that was dated June 10, 2003, and filed under seal on June 11, 2003 (filing 81). An order granting the motion was

signed by Magistrate Judge Piester on June 10, 2003, and also filed under seal on June 11, 2003 (filing 82). As described in the defendant's second motion for a continuance, this was the "third subpoena duces tecum" issued. The government's brief stated that the Special Assistant United States Attorney was aware of two prior subpoenas that had been served on the Nebraska State Patrol, and had been provided with copies of the subpoenaed records, but that the Assistant Federal Public Defender stated during a telephone conversation on June 11th that he was going to request that the third subpoena direct the Nebraska State Patrol not to discuss the contents of the subpoena or provide copies of the subpoenaed documents to the government. (The filed application did not, in fact, contain such a request, nor were the subpoenas issued subject to any such restriction.) It was also stated during this conversation that sealed filings were being used so that the government

would not have an opportunity to comment on the application.

## II. Discussion

The government's brief on appeal (filing 98) raises two questions of law, neither of which were discussed in the brief that was submitted to Magistrate Judge Piester.[2] The government's principal contention on appeal is that *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), requires the defendant to make a threshold showing of racial profiling before a subpoena duces tecum may issue. While this argument might have some relationship to the government's filed objection that the subpoenas were "burdensome on the Nebraska State Patrol, the Nebraska Crime Commission, and the Office of the United States Attorney," I do not consider it.[3]

The government's second argument is that the subpoenas should not have issued upon an ex parte application.[4] I agree.

---

**2.** The government's initial brief merely objected to the proposed "gag order" and claimed that the defendant was on a "fishing expedition."

**3.** I note, however, that Magistrate Judge Piester has expressed the opinion that the argument lacks merit. In a recent order denying the government's motion for a continuance of the suppression hearing (filing 120) which was based in part upon the pendency of this appeal, he stated:

> In addition [to the appeal being rendered moot by the defendant's providing the subpoenaed materials to the government], in my opinion the government's appeal is not meritorious, in that it rests upon an [sic] misapplication of *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)—which is based on a request for discovery *from the government* concerning a *prosecutorial* decision—to distinguishing circumstances in this case, namely, the obtaining of evidence from a non-party concerning a decision made by law enforcement officers on the highway.

(Filing 122, n. 1) (emphasis in original). I am not so certain that *Armstrong* has no application to a racial profiling claim where records are sought from the state law enforcement agency that made the traffic stop. *See, e.g., United States v. Garcia,* No. 98–40113–01–SAC, 1999 WL 318363 at *2 (D.Kan. Feb. 19, 1999) (denying issuance of subpoena duces tecum directed to Kansas State Patrol where defendant failed to make any showing of selective enforcement of traffic laws). I leave the determination of that issue for another day, though. I now merely determine that the Magistrate Judge erred as a matter of law by ordering that a pretrial subpoena duces tecum be issued upon an ex parte application. Whether this procedural defect will have any practical effect in this case also remains to be seen.

**4.** The government also complains in passing that the application and associated filings were sealed. I do not address this separate issue.

Although nowhere mentioned by the government in its brief, the matter of issuing subpoenas is controlled by Fed. R.Crim.P. 17, which provides in part:

(a) Content. A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies. The clerk must issue a blank subpoena-signed and sealed-to the party requesting it, and that party must fill in the blanks before the subpoena is served.

(b) Defendant Unable to Pay. Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

(c) Producing Documents and Objects.

(1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

In particular, we are here dealing with Fed.R.Crim.P. 17(c), which concerns the issuance of subpoenas duces tecum.[5]

Some courts have construed Rule 17(c) as not providing for the issuance of a pretrial subpoena duces tecum upon an ex parte application under any circumstance. *See United States v. Peterson,* 196 F.R.D. 361, 361–62 (D.S.D.2000) (Rule 17(c) motion may not be made ex parte if seeking production of documents prior to trial; it may be made ex parte in connection with witnesses being called to testify at trial, this being in the spirit of Rule 17(b)); *United States v. Finn,* 919 F.Supp. 1305, 1330 (D.Minn.1995) (when Rule 17(c) is utilized for the disclosure of evidentiary materials in advance of trial, the application should be reviewable by the other parties to that proceeding); *United States v. Najarian,* 164 F.R.D. 484, 487–88 (D.Minn.1995) (same); *United States v. Hart,* 826 F.Supp. 380, 381 (D.Colo.1993) (the mechanism for obtaining documents under Rule 17(c) negates any assumption that production should be on an ex parte basis; there can be no right to an ex parte procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties to inspect them prior to trial); *United States v. Urlacher,* 136 F.R.D. 550, 555–56 (W.D.N.Y.1991) (the scheme of Rule 17 supports the view that Congress intended to distinguish between pretrial subpoenas duces tecum and trial subpoenas ad testificandum at least insofar as ex parte procedures are concerned; the explicit provision of a motion to quash or modify in Rule 17(c), and the innovative provision for pretrial production under supervision of the court and upon terms which permit "inspect[ion] by the parties

---

5. Also applicable is NELR 45.1(b), which local rule provides: "Except upon order of a judge, no subpoena for production of documents or objects shall be sought or issued if such subpoena requests production before trial. Fed.R.Crim.P. 17(c)."

and their attorneys," clearly suggests, if not compels, a conclusion that litigation concerning issuance of and compliance with subpoenas duces tecum be conducted upon notice, and not in secret). *See also United States v. Ashley,* 162 F.R.D. 265, 266–67 & n. 2 (E.D.N.Y.1995) (expressing concern over ex parte application under Rule 17(c), but finding it unnecessary to decide issue).

Other courts have held that ex parte applications under Rule 17(c) may be appropriate in limited circumstances. *See United States v. Agboola,* Nos. 00–100 JRT/FLN, 01–124 JRT/ESS, 01–162 JRT/FLN, 2001 WL 1640094 at *6 (D.Minn. Oct. 31, 2001) (ex parte applications for a pretrial subpoena duces tecum are granted in only limited circumstances; magistrate judge's order granting defendant's ex parte Rule 17(c) motion reversed as clearly erroneous where defendant made no showing that any evidentiary documents requested would warrant secrecy, or would, even inferentially, disclose any of his work product or litigation strategies); *United States v. Daniels,* 95 F.Supp.2d 1160, 1162–63 (D.Kan.2000) (court interprets Rule 17(c) as providing for an ex parte application for a subpoena duces tecum seeking pretrial production of documents to be issued to a third party; although ex parte proceedings are not favored, they may be necessary under certain circumstances, e.g., where the source or the integrity of the evidence otherwise might be imperiled, or where trial strategy might be disclosed; necessity of ex parte application must be evaluated on a case by case basis); *State v. DiPrete,* 698 A.2d 223, 226–28 (R.I.1997) (applying substantially identical state rule of criminal procedure) (in order to ensure that Rule 17(c) is not used as a discovery device, opposing party ordinarily should be afforded notice and an opportunity to challenge a motion for issuance of a pretrial subpoena duces tecum; ex parte applications may be warranted only in ex-traordinary circumstances, as where identification of the source of evidence might imperil the source or the integrity of the evidence or where a fundamental privacy right or constitutional interest of a defendant might be implicated); *United States v. Stewart,* No. CRIM–A 96–583, 1997 WL 103700 (E.D.Pa. Mar. 4, 1997) (granting defendant's motion to unseal government's ex parte applications under Rule 17(c) where filings contained no information that would reveal trial strategy and government made no showing that secrecy was required to preserve the source or integrity of the evidence); *United States v. Tomison,* 969 F.Supp. 587, 589–95 (E.D.Ca. 1997) (while recognizing that the weight of authority disfavors ex parte applications under Rule 17(c), court interprets rule to provide for ex parte applications in situations where the defendant seeks to serve a subpoena duces tecum for the pre-trial production of documents on a third party, and cannot make the required showing without revealing trial strategy); *United States v. Beckford,* 964 F.Supp. 1010, 1025–31 (E.D.Va.1997) (Rule 17(c) authorizes ex parte procedure with respect to the issuance of pre-trial subpoenas only in exceptional circumstances; ordinarily, ex parte procedure will be unnecessary and thus inappropriate, e.g., where one party subpoenas documents from the files of the opposing party, where defense subpoenas seeking documents from state law enforcement agencies officially involved in the federal investigation of the crimes on trial, or where both parties will have pre-trial access to the documents). *See also* 2 Charles Alan Wright, *Federal Practice and Procedure,* § 274, at 245–46 (3d ed. 2000) (Rule 17(c) does not contain authorization for an ex parte application for pre-trial production; it has been held, however, that in limited circumstances both the government and a defendant may make an

ex parte application for a pretrial subpoena duces tecum).

Finally, a few courts have held that ex parte applications under Rule 17(c) may be granted routinely, provided that the relevancy, admissibility, and specificity standards of *United States v. Nixon,* 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) are satisfied. *See United States v. Venecia,* CR No. 96-449-FR, 1997 WL 325328 at *4 (D.Or. May 16, 1997) (most reasonable procedure under Rule 17(c) is one which is consistent with the procedure to obtain a subpoena for trial testimony under Rule 17(a) and Rule 17(b)); [6] *United States v. Jenkins,* 895 F.Supp. 1389, 1396–97 (D.Hawai'i 1995) (in reviewing applications for subpoenas duces tecum, a court needs no assistance in applying the *Nixon* standards; regardless of what happens once the subpoena issues, the court's decision in the first instance to issue the subpoena should approximate where possible the blank subpoena provided for in Rule 17(a) and the Rule 17(b) ex parte procedure simulating the blank subpoena); *United States v. Reyes,* 162 F.R.D. 468, 470 (S.D.N.Y.1995) (there are strong policy reasons in favor of an ex parte procedure, i.e., the source or the integrity of the evidence might be imperiled by early disclosure, or a party might have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards; furthermore, the non-moving party may lack standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed material).

■ I now adopt the majority view. I decide that the law, particularly Rule 17(c), does not ordinarily permit the use of ex parte applications by the government or the defense for subpoenas seeking pretrial production of documents unless the sole purpose of seeking the documents is for use at trial.[7]

■ I have carefully examined the application (filing 81), and I find no good reason for its ex parte filing and treatment. It is clearly intended to support a pretrial motion. It will be the exceedingly rare case where such pretrial applications should be considered ex parte. In the pretrial context, and divorced from consideration of trial, generalized statements about premature disclosure of "strategy" or "work product" will almost never be a good reason for ex parte consideration. If the documents are sought for pretrial production and use in support of, or in defense to, a pretrial motion there is no entitlement under a plain reading of the Rules to tactical surprise. This is particularly true because the very nature of federal pretrial procedure in criminal cases requires that strict limits on discovery be enforced. *See* Fed.R.Crim.P. 16(a)(2) & (d)(1). It is difficult, perhaps impossible, to enforce those strict limits absent hearing the views of the adversary. (To be clear, the rule I now adopt does not prohibit the court from sealing applications or supporting information in the proper case so long as the opposing party is served

---

**6.** The district court in *Venecia* relied the reasoning of *United States v. Florack,* 838 F.Supp. 77, 79–80 (W.D.N.Y.1993), as adopted by the Eighth Circuit in *United States v. Hang,* 75 F.3d 1275, 1282 (8th Cir.1996). *Florack* and *Hang,* however, dealt only with *trial* subpoenas, and not with subpoenas for pretrial production of documentary evidence. *See DiPrete,* 698 A.2d at 227.

**7.** Even where pretrial production is sought for the sole purpose of presenting evidence at trial, the court should (1) not consider the application ex parte unless there is a good trial-related reason; and (2) in most circumstances, require that the pretrial production take place in the presence of the adversary.

with a copy of that which is sealed and consideration of the sealed information is subject to the normal adversary constraints.)

I will therefore reverse and set aside the Magistrate Judge's order (filing 96) that denied the government's objection to ex parte consideration of the application for issuance of document subpoenas. Whether the order directing the issuance of the subpoenas (filing 82) should also be set aside, I leave to Magistrate Judge Piester to determine.

Accordingly,

IT IS ORDERED that:

1) Plaintiff's objection to and appeal from the Magistrate Judge's order (filing 97) is sustained in part; and

2) the Magistrate Judge's order (filing 96) is reversed and set aside.